Benito **COVARRUBIA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–94–00039–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 23, 1995.

550

Kent A. Schaffer, Steven J. Lieberman, Houston, for appellant.

John B. Holmes, Jr., Alan Curry, Tommy Lafon, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and O'CONNOR and MIRABAL, JJ.

## OPINION

MIRABAL, Justice.

After the trial court overruled his motion to suppress, appellant Benito Covarrubia entered a plea of guilty to felony possession of marihuana. The trial court assessed punishment at five years confinement and a fine of $1000. We affirm.

In two points of error, appellant asserts the trial court erred in overruling his motion to suppress evidence obtained in violation of both article I, section 9 of the Texas Constitution and the fourth amendment of the United States Constitution.[1] He argues that his warrantless arrest and the warrantless search incident thereto were not supported by probable cause.

At the suppression hearing, Houston Police Officer Redman testified that at about 7 p.m. on November 20, 1992, he received a call on the department's "clue line" from an un-

---

1. The search and seizure provisions of the Texas Constitution warrant an analysis separate and distinct from a federal constitutional analysis. *See Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim.App.1991). However, despite the Court of Criminal Appeals' declaration in *Heitman* that state courts need not be bound by fourth amendment precedent when interpreting article I, section 9, departures have been made in only two circumstances. *See Autran v. State*, 887 S.W.2d 31, 42 (Tex.Crim.App.1994) (holding article I, section 9 provides greater protection than the fourth amendment in the context of inventories); *Richardson v. State*, 865 S.W.2d 944 (Tex.Crim. App.1993) (recognizing that use of a pen register "may well constitute a search" under the state constitution although it would not under its federal counterpart). Appellant makes no distinction between the constitutions with regard to warrantless arrests, and research reveals no cases calling for a different interpretation in this area. In fact, subsequent to *Heitman*, the Court of Criminal Appeals reviewed standards for investigative stops under article I, section 9 by applying standards of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) as adopted by Texas courts without an independent analysis of state law. *Davis v. State*, 829 S.W.2d 218, 220–21 (Tex.Crim.App.1992). Consequently, this discussion applies to both.

identified citizen. Redman, a six-year veteran of the narcotics division, testified the caller told him that a large quantity of marihuana was to be sold at a particular residence in Houston some time that night. The caller identified the sellers as three Hispanic men, provided general physical descriptions and stated that two of the sellers were known as "Big John" and "Benny." The caller described the sellers' vehicle as a blue and gray pickup truck, and told Redman that the third unidentified seller would be the driver.

The caller also told Redman the purchasers were two white males named "George" and "Michael" who would be in the house with Rick Varner, the owner of the residence. The caller described the purchasers' vehicle as a pickup truck with a camper bearing Ohio license plates, and said it would be parked near the intersection of Hammerly and Bauer. The caller also indicated there might be weapons at the residence.

Upon receiving this information, Redman confirmed that Varner lived at the address given by the caller, and determined that Varner had a criminal record. At about 9 p.m., Redman and Officer Dora drove to the residence where they found a blue and gray pickup truck parked in the driveway. Redman testified that they then drove to the intersection of Hammerly and Bauer, and they observed a pickup truck bearing Ohio license plates parked near there.

Redman testified that when he and Dora returned to the residence at about 10:30 p.m., the blue and gray pickup truck previously parked at the house was no longer there. The two officers set up surveillance, parking their unmarked car about four to six houses away. Four additional officers arrived about this time. During the surveillance, Redman was in telephone contact with an assistant district attorney.

Just after midnight, the blue and gray pickup truck returned to the residence. Redman testified that from his vantage point he was able to determine that the three men getting out of the truck matched the "general descriptions" of the sellers given by the call-er. One of those men, known as "Benny," was later identified as appellant.[2] Redman and Dora watched as the men removed a box and two plastic bags from the bed of the truck. According to the officers, this type of packaging is often used to transport large amounts of marihuana. At this point, the officers believed the men were preparing to take marihuana into the residence to make a sale. Redman advised the other officers to move in. The six narcotics officers were in full raid gear, while three patrol officers wore regular uniforms.

When the officers arrived at the house, the three men were "right at the front door." The officers identified themselves as police officers and told the three men to stop. Redman testified that despite his order to stop, the men hurriedly went into the house. Redman and another officer knocked on the front door and again identified themselves as police officers, while another unit took a position at the back of the house. Redman testified that one of the suspects blocked the door and the officers were refused entry. Redman was notified by an officer on the east side of the house that someone was attempting to exit the house through a window. Redman explained that because he suspected a felony was in progress, and because he believed evidence may be destroyed, he decided to forcibly enter the residence. Redman also expressed concern about the safety of the officers and the safety of any other individuals that might have been present in the residence.

Upon entering the residence, the officers smelled freshly cut marihuana and observed in plain view several packages they believed to contain marihuana. Six men were in the living room of the residence and one, appellant, was running through the house. It took several minutes to secure the scene.

Rick Varner refused to consent to a search of the house, and Redman testified that no additional search was conducted at that time. Robin Varner, Rick's wife, arrived home at about 1:30 a.m. to find the house in disarray

---

**2.** The conviction of the driver of the vehicle was affirmed by this Court in *Villarreal v. State,* 893 S.W.2d 559 (Tex.App.—Houston [1st Dist.], 1994).

and at least four officers still present in her home. Mrs. Varner testified it appeared that a search had already taken place. She further testified that because she feared going to jail and losing her child if she refused, she gave her consent to search the house. The search revealed several weapons, a large amount of cash and smaller quantities of marihuana.

■ At a suppression hearing, the trial judge is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The court may accept or reject any or all of the witnesses' testimony. *Id.* This Court should not engage in its own factual review. Instead, viewing the evidence in the light most favorable to the trial court's ruling, this Court must consider only whether the judge improperly applied the law to the facts. *Id.* Absent a showing of abuse of discretion, the trial court's finding should not be disturbed. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex. Crim.App.1985).

■ When a defendant seeks to suppress evidence because of an illegal arrest that violates the federal or state constitution, the defendant bears the initial burden to rebut the presumption of proper police conduct. *Russell v. State,* 717 S.W.2d 7, 9 (Tex. Crim.App.1986); *Johnson v. State,* 834 S.W.2d 121, 122 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). The defendant meets this burden by proving that police seized him without a warrant. *Russell,* 717 S.W.2d at 9. Once the defendant establishes that a warrantless search or seizure occurred, the burden shifts to the State either to produce evidence of a warrant or to prove the reasonableness of the search or seizure pursuant to one of the recognized exceptions to the warrant requirement. *Id.* Since the evidence here clearly established the absence of a warrant, the burden rested upon the State to prove the existence of a valid exception.

■ In Texas, warrantless arrests are authorized only if (1) there is probable cause with respect to the seized individual, *and* (2) the arrest falls within one of the exceptions set forth in Chapter 14 of the Code of Crimi-

nal Procedure. *Stull v. State,* 772 S.W.2d 449, 451 (Tex.Crim.App.1989). Probable cause exists "when the facts and circumstances within the officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not," a particular suspect has committed a crime. *Muniz v. State,* 851 S.W.2d 238, 251 (Tex.Crim.App.1993).

■ In determining whether probable cause existed before the arrest, this Court must examine the cumulative information known to all officers participating in the arrest. *Lunde v. State,* 736 S.W.2d 665, 667 (Tex.Crim.App.1987). At the time Officer Redman made the decision to enter the house, the following facts had been established:

1.  An anonymous caller had said a large quantity of marihuana was to be sold that night, at a particular residence owned by Rick Varner, and the sale would involve individuals and vehicles described by the caller.

2.  Rick Varner lived at the address given by the anonymous caller.

3.  A pickup truck bearing Ohio license plates matched the caller's description of the buyer's truck, and it was parked where the caller had indicated it would be.

4.  A pickup truck matching the caller's description of the seller's vehicle arrived and parked in front of the house.

5.  Three men matching the general description of the sellers given by the caller got out of the truck and carried two bags and a box into the house, the types of containers often used to transport large amounts of marihuana.

6.  When the police officers approached the three men, identified themselves as police officers, and asked them to stop, the three men rushed into the house; one of the men blocked the door from the inside and refused to open it; the officers could hear people running throughout the house; one man attempted to flee the house through a side window.

Based on these facts and circumstances, we conclude the trial court did not abuse its

discretion in finding the officers had probable cause to arrest appellant for intentionally fleeing from the officers who were lawfully attempting to detain them for the purpose of investigating possible criminal activity. TEX. PENAL CODE ANN. § 38.04(a) (Vernon 1994).

A peace officer may arrest an offender without a warrant for any offense committed in the officer's presence or within the officer's view. TEX.CODE CRIM.PROC.ANN. art. 14.01(b) (Vernon 1977). However, an officer may not enter a residence to make the warrantless arrest unless: (1) a person who resides in the residence consents to the entry; or (2) exigent circumstances require that the officer making the arrest enter the residence without the consent of a resident or a warrant. TEX.CODE CRIM. PROC. ANN. art. 14.05 (Vernon Supp.1995). Circumstances justifying a warrantless entry include (1) rendering aid or assistance to persons whom the officers reasonably believe are in need of assistance; (2) preventing the destruction of evidence or contraband; and (3) protecting the officers from persons whom they reasonably believe to be present and armed and dangerous. *McNairy v. State*, 835 S.W.2d 101, 107 (Tex.Crim.App.1991).

With regard to the possible destruction of evidence as an exigent circumstance, the State must show that the police could have reasonably concluded that evidence would be destroyed or removed before they could obtain a search warrant. *McNairy*, 835 S.W.2d at 107. Factors bearing upon the reasonableness of the officer's actions include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a warrant is sought; (4) information indicating the possessors of the contraband are aware the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in narcotics trafficking. *Id.*

Officers on the scene could have reasonably believed that the individuals in the house were able to dispose of evidence. Officer Redman testified that while he had obtained warrants in less than an hour, it would likely have taken two to four hours to obtain one that night. He further testified that 50 pounds of marihuana could be destroyed in 10 to 15 minutes. Furthermore, the occupants of the house knew the police were outside and one of them had already attempted escape. The officers had reason to believe there were weapons in the residence. Based on these factors, we cannot say the trial court abused its discretion in concluding that exigent circumstances supported entry into the house without a warrant.

Accordingly, the trial court did not err in overruling appellant's motion to suppress the evidence seized in the house. We overrule appellant's two points of error.

We affirm the judgment.