**Jeffrey Edward TAYLOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–95–00243–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 24, 1997.

Charles Freeman, Houston, for Appellant.

Ernest Davila, Houston, for Appellee.

Before SCHNEIDER, C.J., and HEDGES and O'CONNOR, JJ.

## OPINION

HEDGES, Justice.

We must decide the validity of a search incident to an arrest. Appellant Jeffrey Edward Taylor was convicted of aggravated robbery and sentenced to life in prison. Act of May 29, 1989, 71st Leg., R.S., ch. 357, § 2, 1989 Tex. Gen. Laws 1441, 1442 (TEX. PENAL CODE ANN. § 29.03, since amended). In 31 points of error, appellant claims the trial court erred in: (a) admitting a gun into evidence that was the fruit of an unlawful arrest (point 1); (b) allowing improper testimony about appellant's character (points 2 and 7); (c) allowing appellant to be impeached by a prior conviction (points 3–6); (d) admitting inadmissible hearsay evidence (points 8–11); (e) submitting an incorrect or incomplete charge (points 12–27); and (f) allowing improper argument at both the guilt or innocence and punishment phases (points 28–31). We reverse.

| Facts | Argument |
|---|---|

Appellant and James Christopher Law both lived at the La Cinema Motel. One evening, they borrowed a car to go joyriding and picked up Mickey Webb, appellant's friend. Appellant drove to the trailer home of the victim, Dennis Earl Hass. While Law remained in the car, appellant and Webb knocked on Hass' door. Hass eventually let them in.

Appellant and Webb stayed in the trailer for ten to fifteen minutes. Appellant then came back to the car and loaded Hass' .380 Davis semiautomatic pistol. When Law asked appellant what he planned to do, appellant said, "It's none of your business." Appellant returned to the trailer. After another five to ten minutes, Hass came out of his trailer, drenched in blood. Webb followed Hass, stabbing him a number of times with a knife. Appellant came out of the trailer, stood behind Webb, and held the gun while Webb stabbed Hass.

Appellant and Webb then went back into the trailer. When Law tried to leave the murder scene, appellant stopped him. Holding Hass' wallet and pointing the gun, appellant ordered Law to drive Hass' truck and follow him and Webb in the car in which they had arrived. The three men went down to the bayou, where Webb apparently disposed of the knife. All three then returned to the motel.

The next morning, Law called the police to report the stabbing and spoke with Houston Police Department Sergeant D.D. Shirley. Based on Law's description, the police arrested Webb. Sergeant Shirley went to the La Cinema Motel and spoke with the motel manager at approximately 10:40 a.m. The manager indicated that the checkout time for appellant's room was 11:00 a.m. Sergeant Shirley requested police backup, and when it arrived, he knocked on appellant's door. A woman opened the door, and Sergeant Shirley saw someone on the bed. Sergeant Shirley testified, "[A]fter I made entry, I asked [appellant] his name" and placed him under arrest. Sergeant Shirley testified that at the time he arrested appellant, he saw Hass' semiautomatic pistol lying in plain view on a dresser at the foot of the bed.

In point of error one, appellant contends that the trial court violated both his federal and state constitutional rights and his statutory rights against unreasonable searches and seizures when it overruled (1) his objection to the introduction into evidence of Hass' gun and (2) his motion to suppress. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; TEX.CODE CRIM. P. ANN. art. 1.06 (Vernon 1977). The gravamen of his complaint is that because the police officer's entry violated Code of Criminal Procedure article 14.05, the fruits of the resulting search incident to the arrest were constitutionally and statutorily infirm. *See* TEX.CODE CRIM. P. ANN. art. 14.05 (Vernon Supp.1997).

Appellant's motion to suppress was made during trial, after the trial court overruled his objection to the introduction of the gun. The motion to suppress sought exclusion of not only the gun, but also of any other evidence seized as a result of the search of appellant's motel room. Because the motion to suppress is broader in scope than the objection to the introduction of the gun, we will analyze point one based on the trial court's overruling of the motion to suppress.

■ At a suppression hearing, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Covarrubia v. State*, 902 S.W.2d 549, 553 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). The trial court may accept or reject any or all of the witnesses' testimony. *Covarrubia*, 902 S.W.2d at 553. We do not engage in our own factual review. Instead, viewing the evidence in the light most favorable to the trial court's ruling, we consider only whether the trial court improperly applied the law to the facts. *Romero*, 800 S.W.2d at 543; *Covarrubia*, 902 S.W.2d at 553. Absent a showing of an abuse of discretion, the trial court's findings should not be disturbed. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App. 1985); *Covarrubia*, 902 S.W.2d at 553.

■ When a defendant seeks to suppress evidence because of an illegal arrest,

the defendant bears the initial burden to rebut the presumption of proper police conduct. *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim.App.1986); *Covarrubia*, 902 S.W.2d at 553. The defendant meets this burden by proving that the police seized him without a warrant. *Russell*, 717 S.W.2d at 9; *Covarrubia*, 902 S.W.2d at 553. Once the defendant establishes that a warrantless search or seizure occurred, the burden shifts to the State either to produce evidence of a warrant or to prove the reasonableness of the search or seizure pursuant to one of the recognized exceptions to the warrant requirement. *Russell*, 717 S.W.2d at 9; *Covarrubia*, 902 S.W.2d at 553.

In Texas, warrantless arrests are authorized only if (1) there is probable cause with respect to the seized individual *and* (2) the arrest falls within one of the exceptions to warrantless arrests set forth in chapter 14 of the Code of Criminal Procedure. *Stull v. State*, 772 S.W.2d 449, 451 (Tex.Crim.App. 1989); *Covarrubia*, 902 S.W.2d at 553. Even if we assume that Sergeant Shirley had probable cause to arrest appellant, the State must still show a chapter 14 exception to conduct a warrantless arrest.

Code of Criminal Procedure article 14.05 provides:

In each case enumerated where arrests may be lawfully made without warrant, the officer or person making the arrest is justified in adopting all the measures which he might adopt in cases of arrest under warrant, except that an officer making an arrest without a warrant may not enter a residence to make an arrest unless:

(1) a person who resides in the residence consents to the entry; or

(2) exigent circumstances require that the officer making the arrest enter the residence without the consent of a resident or without a warrant.

Tex.Code Crim. P. Ann. art. 14.05 (Vernon Supp.1997).[1] Exigent circumstances justifying a warrantless entry include: (1) rendering aid or assistance to persons whom the officer reasonably believes are in need of assistance; (2) preventing the destruction of evidence or contraband; and (3) protecting the officer from persons whom they reasonably believe to be present and armed and dangerous. *McNairy v. State*, 835 S.W.2d 101, 107 (Tex.Crim.App.1991); *Covarrubia*, 902 S.W.2d at 554.

On appeal, the State first argues that it had probable cause to arrest appellant. Assuming that we accept the State's probable-cause argument, the State still does not explain the police officer's justification for entering the motel room and arresting appellant without a warrant. The State argues that the police officer

did not commit a governmental intrusion by simply knocking on the door. Once the officer saw a man who matched the description provided by James Law and the appellant identified himself as that person, the officer had sufficient probable cause to arrest him. After the officer saw the pistol, he could seize it as incident to arrest.

Officer Shirley testified that at 10:40 a.m., he learned that the motel check out time was 11 a.m. Thus, the procurement of a warrant was not prudent since the appellant has to leave the motel room in a few minutes and would no longer be available. Again, regardless, the officer has a right to be at the motel room door and knock like any other citizen.

(Citations omitted.) We do not quarrel with the State's argument insofar as it relates to *knocking* on the motel room door. Nowhere, however, does the State address the police officer's justification for *entering* the motel room based on an article 14.05 exception to the warrant requirement.

Our review of the record persuades us that there is no evidence to show that the police officer had the appellant's or his girlfriend's consent to enter the motel room. Sergeant Shirley testified for the State as follows:

Q. When you got to the door of room number 25, what did you do?

---

1. A hotel or motel room is the equivalent of a home in the context of constitutional protections from unreasonable searches and seizures. *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964); *Voelkel v. State*, 629 S.W.2d 243, 245 (Tex.App.—Fort Worth 1982), *aff'd*, 717 S.W.2d 314 (Tex.Crim.App.1986).

A. I knocked on the door.

Q. What happened after you knocked on the door?

A. After a couple of minutes, the door was opened.

Q. Who opened the door, male or female?

A. Female.

. . . .

Q. How far did she open the door?

A. Almost all the way.

Q. Could you see anybody else or anything else, once this white female opened the door?

A. Yes, I could.

Q. Tell the jury what you saw.

A. I saw a bed with an individual covered up in the bed with the exception of his feet extending out underneath the cover.

Q. What was the description of the person you saw lying in the bed with the covers on him?

A. All I could tell was that it was a black person with their [sic] feet sticking out from underneath the cover.

Q. Male or female?

A. Male.

Q. Did you ask him who he was? Did you ask the person in the bed who he was?

A. Initially, *after I made entry,* I asked him his name.

Q. Okay. Once you got inside the room, tell us what happened.

A. I asked the individual his name and advised him he was under arrest.

(Emphasis added.)

We also conclude that there is no evidence in the record to demonstrate exigent circumstances that would have allowed the police officer to enter the motel room without a warrant or without consent. There is no evidence that the police officer entered the motel room either to (1) render aid or assistance to someone he reasonably believed was in need of assistance, (2) prevent the destruction of evidence or contraband, or (3) protect himself from appellant. *See McNairy,* 835 S.W.2d at 107. In addition, there is no evi-

dence that appellant was attempting to escape. *See Green v. State,* 594 S.W.2d 72, 74 (Tex.Crim.App. [Panel Op.] 1980) (no evidence that defendants were about to escape in order to justify warrantless arrest).

The State suggests that the police officer had to arrest appellant before 11 a.m., checkout time, because appellant might have left his room. We are unconvinced. The police officer could have arrested appellant without violating article 14.05 by either (1) waiting for appellant to leave the motel room or (2) entering the room after 11 a.m., checkout time, with the motel manager's permission. *See Voelkel v. State,* 717 S.W.2d 314, 315–16 & n. 1 (Tex.Crim.App.1986). Accordingly, we conclude that appellant's warrantless arrest was invalid with the consequence that the trial court erred in not suppressing any evidence obtained as a result of the invalid arrest. *See* TEX.CODE CRIM. P. ANN. art. 38.23(a) (Vernon Supp.1997) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

### Harmless–Error Analysis

 We must next determine beyond a reasonable doubt whether this error made no contribution to appellant's conviction or his punishment. TEX.R.APP. P. 81(b)(2). To make this determination, we consider: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent the error was emphasized by the State; (4) the error's probable collateral implications; (5) how much weight a juror would probably place on the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App. 1989). First, the source of the error was the State's introduction of evidence seized as a result of an improper search. Second, the nature of the error is that the police officer's conduct violated appellant's federal and state constitutional rights and Code of Criminal Procedure article 14.05. Third, the State

emphasized the fact appellant had the gun in his motel room in both opening and closing arguments. Fourth, the evidence corroborated Law's testimony that appellant pointed a gun at Hass during Hass' murder and directly connected appellant to the commission of the crime of aggravated robbery. Fifth, it is highly likely that the jury placed great weight on the introduction of the gun. Sixth, and perhaps most important, declaring the police officer's warrantless arrest to be harmless error would effectively eviscerate the protection afforded individuals by article 14.05, *i.e.,* freedom from unreasonable searches and seizures while in one's residence. Therefore, we cannot determine beyond a reasonable doubt that the error made no contribution to appellant's conviction or to his punishment of life in prison.

We sustain point of error one.[2]

We reverse the trial court's judgment of conviction and remand the cause to the trial court for a new trial. *See* TEX.CODE CRIM. P. ANN. art. 44.29(a) (Vernon Supp.1997).

---

**2.** We do not reach the merits of points of error two through 31 based on our disposition of point of error one.