**Manuel Wayne NEWHOUSE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–98–01290–CR, 01–98–01291–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 2, 2001.

Roland Brice Moore, III, Houston, for Appellant.

Calvin Hartmann, Rikke Burke Graber, Assistant District Attorneys, Houston, for State.

Panel consists of Chief Justice SCHNEIDER and Justices WILSON and ANDELL.*

## OPINION

WILSON, Justice.

Following the trial court's denial of his written motion to suppress, Manuel Wayne Newhouse, appellant, pleaded guilty to possession of a controlled substance and felon in possession of a firearm. In accordance with a plea bargain agreement, the trial court sentenced appellant to prison for 20 years for the possession charge and 25 years for the firearms charge. In his motion to suppress, appellant moved to suppress all of the evidence, including the weapon, drug paraphernalia, and cocaine obtained when a police officer entered ap-

pellant's motel room without a warrant or consent and prior to any arrest. We reverse and remand.

In his first two points of error, appellant claims the trial court erred in denying his motion to suppress because the police officers conducted an unlawful detention and an unlawful search. In his final point, he claims the trial court considered inadmissible evidence at the hearing on the motion to suppress.

## FACTS

Based on an anonymous tip that drugs were being sold out of room number 5 at the Southwind Motel, Deputy Richard Steck and Deputy David Peterson went to the Southwind Motel. Deputy Steck testified he had worked for the Harris County Sheriff's Department for 13 years. His assignment was to patrol "hot spot narcotics" and investigate possible crack houses and narcotics locations based on telephone tips. Deputy Steck testified the Southwind Motel was not considered a hot spot, but people go there to buy narcotics.

When the officers arrived and began to approach room number 5, a white female exited the room and left the door open. The officers stopped her 10 to 15 feet from the open door. While the officers were speaking with her, Deputy Steck saw appellant, who remained in the room, come to the open door, see the uniformed officers, and throw something behind the open door. Deputy Steck did not see what appellant threw.

The officers then summoned appellant to them. As requested by the officers, appellant left the room, and the door remained open. While the second deputy watched appellant and the woman outside the room,

---

* The Honorable Eric Andell, former Justice, Court of Appeals, First District of Texas, par- ticipating by assignment.

Deputy Steck entered the room through the open door. The State does not contend a warrant or consent existed, and neither appellant nor the woman was under arrest.

Deputy Steck testified he asked appellant to leave the room so he could enter it to find out what appellant had thrown behind the door. Further, Deputy Steck testified he had no fear of someone in the room, he was not in fear of appellant, and not in fear of whatever appellant had thrown. Deputy Steck testified he wanted to insure the room was empty.

Deputy Steck retrieved a loaded, semiautomatic pistol from behind the door. As he looked around the room, he saw drug paraphernalia and cocaine on top of the furniture. After the search, both appellant and the woman admitted to cocaine use that day in the motel room. Appellant explained to the officers he was keeping the weapon for a friend. At that point, the officers placed appellant and the woman under arrest. At no time did either officer draw his weapon.

## STANDARD OF REVIEW

█ When a motion to suppress is presented, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). The appellate court's only role is to decide whether the trial court improperly applied the law to the facts. *Williams v. State*, 937 S.W.2d 23, 26 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd, untimely filed). Unless the trial court clearly abused its discretion, we will not disturb its findings. *Rivera v. State*, 808 S.W.2d

80, 96 (Tex.Crim.App.1991); *Williams*, 937 S.W.2d at 26.

█ Further, the appellate court affords nearly complete deference to the trial court's rulings on "mixed questions of law and fact," such as probable cause and reasonable suspicion, where the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. Accordingly, the appellate court reviews the evidence in the light most favorable to the ruling of the trial court. *Id; Taylor v. State*, 945 S.W.2d 295, 297 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd) (applying standard and reversing trial court).

## UNLAWFUL SEARCH

In point of error two, appellant claims the trial court erred in denying his motion to suppress because an unlawful search occurred when the officer had no legally sufficient reason to enter the motel room without a warrant before his arrest. Thus, the evidence the officer found in plain view after entering the room cannot be admitted. We agree.

█ The State conceded at the hearing on the motion to suppress the officers did not have a warrant, did not have appellant's consent, and had not, as yet, arrested appellant. Thus, appellant has met the initial burden of proving a search occurred without a warrant, which shifts the burden to the State to prove the reasonableness of the search.[1] *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986) (establishing warrantless search defeats presumption of proper police conduct).

---

1. Appellant had lived in the motel room for more than a week; therefore, appellant has standing to contest the legality of the search of the motel room. A motel room can be a home subject to constitutional protections from unreasonable searches and seizures. *Stoner v. California*, 376 U.S. 483, 490, 84

S.Ct. 889, 893, 11 L.Ed.2d 856 (1964); *Voelkel v. State*, 629 S.W.2d 243, 245 (Tex.App.—Fort Worth 1982), *aff'd*, 717 S.W.2d 314 (Tex. Crim.App.1986); *see also Taylor*, 945 S.W.2d at 298. Police entry without consent into a residence is a search. *McNairy v. State*, 835 S.W.2d 101, 106 (Tex.Crim.App.1991).

■ To overcome appellant's challenge, the State must prove the officer acted reasonably. *Russell,* 717 S.W.2d at 9; *Taylor,* 945 S.W.2d at 300. The State must show (1) probable cause existed at the time the officer made the search and (2) exigent circumstances existed that made obtaining a warrant impracticable.[2] *Taylor,* 945 S.W.2d at 300.

■ With deference to the trial court's determinations, we assume the State has shown probable cause. *McNairy v. State,* 835 S.W.2d 101, 106 (Tex.Crim.App.1991) (holding probable cause exists when reasonably trustworthy facts and circumstances within officer's knowledge would lead reasonably prudent man to believe instrumentality of crime or evidence of crime will be found).

However, the State must also show exigent circumstances existed to justify a warrantless entry. *Taylor,* 945 S.W.2d at 300. The State contends appellant's furtive behavior justified a cursory safety check by the officer. Although, the State points to no authority and we can find none where "furtive behavior" has been held to provide more than probable cause. *See, e.g., Stull v. State,* 772 S.W.2d 449, 451 (Tex.Crim.App.1989) (holding seemingly innocent behavior coupled with anonymous tip not sufficient to show probable cause to arrest); *Crockett v. State,* 803 S.W.2d 308, 312 (Tex.Crim.App.1991) (holding suspicious conduct must be distinguishable from conduct of innocent people to justify reliance upon for probable cause to detain).

There are actually two types of checks police officers can conduct arising from safety concerns, a cursory check and a protective sweep. *See, e.g., Simpson v. State,* 709 S.W.2d 797, 802–03 (Tex.App.—Fort Worth 1986, no pet.) (holding a cursory check of defendant's bedroom not justified where police found marihuana in kitchen); *Reasor v. State,* 12 S.W.3d 813, 815 (Tex.Crim.App.2000) (holding a protective sweep of house not justified where police arrested defendant in driveway). We need not address either form of search, however, because appellant was not under arrest when the search occurred. *See, e.g., Simpson,* 709 S.W.2d at 802; *Reasor,* 12 S.W.3d at 815. Here, Deputy Steck testified appellant was not placed under arrest until after the search took place.

■ The officers did not search appellant's immediate vicinity; Deputy Steck searched a room 10 to 15 feet away from where appellant was standing. Deputy Steck testified appellant willingly left the room, came over to the officers, and spoke with the officers. Deputy Steck testified he did not place handcuffs or otherwise restrain appellant when he approached the officers. Deputy Steck testified he was not in fear of appellant. Further, Deputy Steck's testimony shows he did not treat appellant as a person he believed was armed and presently dangerous by drawing his weapon or handcuffing appellant. The State has presented no evidence the officers had a reasonable belief appellant was armed and presently dangerous; therefore, the State has not shown the officers were reasonable in searching the hotel room.

In support of its position that the safety check was justified, the State points to *Watson v. State,* 861 S.W.2d 410 (Tex.

---

**2.** In fact, overcoming the "impractical" requirement may become more difficult because police officers may reasonably restrain a defendant for at least two hours in order to obtain a warrant when they have probable cause to believe the defendant has drugs in his home and possess a reasonable belief the defendant will destroy the drugs if not restrained. *Illinois v. McArthur,* 531 U.S. 326, 328, 121 S.Ct. 946, 948, 148 L.Ed.2d 838 (2001).

App.—Beaumont 1993, pet. ref'd). In *Watson,* the officers were dispatched to a motel room, learned the manager had rented the room to Jimmy Burrows, and found an active warrant for Burrows. *Id* at 413. When the officers knocked on the door, the man came to the door and told them Burrows was not there. *Id.* While speaking through the open door, an officer saw a woman in the room hurry to the bathroom. *Id.* The officer entered the room to insure the woman was not retrieving a weapon, found cocaine in plain view, and arrested the occupants. *Id.* Thus, the officer provided articulable facts a person in the room posed a potential danger to justify the safety check. *Id.*

Here, at the hearing on appellant's motion to suppress, Deputy Steck did not express a belief that a third person was inside appellant's room, and Deputy Steck never once articulated a belief that a third person inside the room was attempting to jeopardize either his or the public's safety. In fact, Deputy Steck specifically stated he had no fear of someone in the room, he was not in fear of appellant, and he was not in fear of whatever appellant had thrown. Deputy Steck testified he saw appellant make a furtive gesture, appellant threw something, which neither officer clearly saw, behind the door. Further, Deputy Steck testified he entered the motel room specifically to find out what appellant had thrown behind the door. The testimony in this case is similar to the testimony of the officer in *Reasor.* 12 S.W.3d at 817 (officer had no belief of third person's presence, no belief third person posed a threat, and expressed no fear of potential danger). Thus, Deputy Steck did not express a single articulable fact neces-

sitating a protective sweep. We conclude the sweep was unreasonable.

The State presented no evidence the officer entered the motel room either (1) to render aid or assistance to someone he reasonably believed was in need of assistance, (2) to prevent the destruction of evidence or contraband, or (3) to protect himself from appellant. *See McNairy,* 835 S.W.2d at 107. In addition, no evidence existed showing appellant was attempting to escape. *See Green v. State,* 594 S.W.2d 72, 74 (Tex.Crim.App.1980).

■ Accordingly, we conclude the warrantless search of appellant's motel room was invalid and the trial court erred in not suppressing any evidence obtained from the invalid search. *See* Tex.Code Crim. Proc.Ann. art. 38.23(a) (Vernon Supp. 2001).[3]

## HARM ANALYSIS

■ Having determined an error occurred, we next determine beyond a reasonable doubt whether this error made contributed to appellant's conviction or his punishment. Tex.R.App.P. 44.2(a). To decide harmless error, we consider: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent the State emphasized the error; (4) the error's probable collateral implications; (5) how much weight a juror would probably place on the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *See Harris v. State,* 790 S.W.2d 568, 587 (Tex. Crim.App.1989); *Taylor,* 945 S.W.2d at 299.

■ First, the source of the error was the State's use of evidence seized from an

---

**3.** In addition, we cannot turn to the question of whether the items in the room were visible to an officer standing outside the room because the doctrine of inevitable discovery does not overcome the statutory exclusionary rule. *State v. Daugherty,* 931 S.W.2d 268, 269–71 (Tex.Crim.App.1996).

improper search. Second, the nature of the error was that the police officer's conduct violated appellant's federal and state constitutional rights. Third, the State's entire case rested upon the evidence seized in the motel room. Fourth, the evidence caused appellant to plead guilty. Fifth, a jury would probably place great weight on the evidence for the same reason it is important to the State's case. It is the only direct evidence of the crime. Finally, declaring the officer's warrantless search to be harmless error would effectively eviscerate the protection afforded individuals from unreasonable searches and seizures while in one's home. Therefore, we decide beyond a reasonable doubt that the error contributed to the judgment.

We sustain point of error two. Because we conclude constitutional error occurred under point of error two, we do not reach points of error one and three.

### CONCLUSION

We reverse the judgment and remand the cause.