Opinion issued November 4, 2004









 





     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00574-CR




CEDRICK L. DAVIS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 922,950




MEMORANDUM OPINION
          Cedrick L. Davis, appellant, pleaded not guilty to manslaughter. The jury
found him guilty and assessed punishment at 35 years’ confinement. In five points
of error, appellant contends that (1) the trial court erred in admitting evidence of the
search of appellant’s apartment; (2) the trial court erred in denying his motion to
suppress evidence of the illegal search; (3) appellant was denied effective assistance
of counsel at trial; and (4) the evidence is legally and factually insufficient to support
his conviction. We affirm. 
                                                    BACKGROUND
          In the early morning hours of September 1, 2002, Joey Garcia drove his car,
with José Garcia in the passenger seat, around the parking lot of the Pinelake
Condominium to see whether Joey could locate the apartment of a female friend. As
Joey drove around the complex, José heard a car alarm “chirping” on a car belonging
to appellant and someone yelling. As they turned around to see who was yelling at
them, José “saw the fire” and heard two or three gunshots coming from the direction
of where a male was standing; one of the gunshots struck Joey in the face.
          When José realized Joey had been shot, José took the driver’s seat and drove
to a nearby club where they found Houston Police Officers C. Slater and J. Lopez. 
José returned to the complex to show the officers where the shooting had occurred. 
After finding two spent shell casings below appellant’s apartment, the officers
knocked on the door of apartment 68, which was located near the stairwell where José
had seen the male. Appellant’s wife, Monica Davis, answered the door, but refused
to allow the officers into her apartment. Davis denied hearing any gunshots. The
officers informed Davis that an investigator from the police department might later
want to talk to her. Sargent D. Bacon arrived, and the officers determined that the car
with the chirping alarm was registered to appellant, who resided at apartment 68.
          When the officers returned to apartment 68 for the second time, Davis
answered the door and invited Bacon inside. When Bacon told Davis he was looking
for appellant, Davis said she had not seen him that night. Davis said that she had
separated from appellant and he no longer lived in that apartment. Bacon informed
Davis that he had a consent to search form and asked Davis if he could search the
apartment. The officers did not have an arrest warrant or a search warrant. Bacon
informed Davis that “[i]t could also be serious if she was hiding [appellant]” from the
police. At first Davis refused, but she then orally agreed to the search and signed the
form. During the search, the officers found appellant hiding in the bedroom closet. 
Appellant was placed under arrest and read his legal rights. At the Houston Police
headquarters, Sargent E. Mehl again read appellant his rights, interviewed him, and
made an audio recording of appellant’s statement (“the confession”). Later that
morning, appellant also made a recorded statement to Bacon regarding the gun used
in the shooting. Joey died as a result of the gunshot wound.
DISCUSSION
Consent to Search
          In his first point of error, appellant contends the trial court erred by admitting
evidence of the search of appellant’s apartment.


 Specifically, appellant contends that
the arrest was the “fruit” of a warrantless search for which Davis’s consent was
involuntary, both in violation of the Fourth and Fourteenth Amendments to the
United States Constitution and Article I, § 9 of the Texas Constitution. Appellant
argues that the consent to search was not voluntary because Davis was coerced into
signing the consent form and, therefore, the consent form should have been
suppressed. Appellant claims Bacon threatened Davis that she could be faced with
serious consequences if she did not allow the officers to search.
          The State contends that the officers’ search was justified under the “consent”
exception to the probable cause requirements of our state and federal constitutions. 
 The State argues that Davis freely consented to the search and was not coerced by
any officer to sign the consent form. 
          Consent to search is one of the well-established exceptions to the constitutional
requirements of both a warrant and probable cause. Schneckloth v. Bustamonte, 412
U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973); State v. Ibarra, 953 S.W.2d 242, 243
(Tex. Crim. App. 1997). For consent to be a valid exception, however, that consent
must be voluntary. See Ohio v. Robinette, 519 U.S. 33, 40, 117 S. Ct. 417, 421
(1996). In order to be valid, the consent must “not be coerced, by explicit or implicit
means, by implied threat or covert force.” Schneckloth, 412 U.S. at 228, 93 S. Ct. at
2047; see also Allridge v. State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991) (“The
consent must be shown to be positive and unequivocal, and there must not be any
duress or coercion”) (citation omitted). By the same token, consent is not established
by “showing no more than acquiescence to a claim of lawful authority.” Bumper v.
North Carolina, 391 U.S. 543, 548-49, 88 S. Ct. 1788, 1790-91 (1968) (where officer
falsely represented he had a valid search warrant, consent not voluntary). 
          In determining whether a defendant’s consent was voluntary, the State is
required to prove the voluntariness of consent by clear and convincing evidence from
the totality of the circumstances. See Reasor v. State, 12 S.W.3d 813, 818 (Tex.
Crim. App. 2000). In making such a determination, we consider the following
factors: whether the consenting person was in custody, whether he or she was arrested
at gunpoint, whether he or she had the option of refusing consent, the constitutional
advice given to the accused, the length of detention, the repetitiveness of the
questioning, and the use of physical punishment. See Laney v. State, 76 S.W.3d 524,
532 (Tex. App.—Houston [14th Dist.] 2002), aff’d, 117 S.W.3d 854 (Tex. Crim. App.
2003). Courts also consider the characteristics of the consenting person, including
the person’s youth, education, and intelligence. See id.  
          The evidence does not support appellant’s argument that Davis’s consent was
rendered involuntarily. Davis was not uneducated or a child, but rather a female adult
in her twenties. Davis was not under arrest, she was not being held at gunpoint, she
was not in custody, and she was not being physically detained in any fashion. 
Appellant testified at the pretrial hearing on appellant’s motion to suppress that the
officers “were saying to [his wife] that she would be charged with aiding, abetting,
involving herself in a murder investigation . . . [a]nd they came up with another big
offensive case, too, or --- so if she wouldn’t tell us she was home alone or whatever.” 
Bacon explained that he merely told Davis that since a serious offense had occurred,
“[i]t could also be serious if she was hiding [appellant] from us.”
          The testimony of Officer Bacon contradicts appellant’s assertions that Davis’s
consent was coerced. Bacon never stated “one way or another” whether Davis could
or would be charged with a criminal offense if she refused to sign the consent form. 
Bacon never indicated that Davis would receive leniency if she agreed to sign the
form. Bacon testified at the hearing that, first, Davis orally consented to a search and
then Bacon presented, explained, and read a consent to search form to her. Bacon’s
questioning of Davis was confined to a few minutes of questions asked while she
remained in her apartment.
          The State admitted the consent to search form with Davis’s signature on it into
evidence. Immediately above where Davis signed her maiden name of “Monica
Jackson,” the form states in bold capital letters:
          I understand that I have the right to refuse to consent to the search described     above and to sign this form. I further state that no
promises, threats, force, or physical or mental coercion of any kind
whatsoever have been used against me to get me to consent to the search
described above, or to sign this form.
          Officer Lopez’s testimony supports Bacon’s version of events. Lopez, who
was standing inside the apartment doorway with Officer Slater, was present to hear
Officer Bacon read the consent to search form and to see Davis sign the form. Lopez
testified that he neither heard Bacon threaten Davis nor threatened Davis himself.
          Considering all of the circumstances and giving proper deference to the trial
court’s determination, we hold that the State proved by clear and convincing evidence
that Davis freely and voluntarily consented to the police search.
          We overrule appellant’s first point of error.                      
Voluntariness of Statements
          Appellant, in his second point of error, contends that his two in-custody
statements, which included a confession to shooting at Joey’s car while Joey and José
were in the vehicle, as well as a statement concerning the gun, were not voluntarily
given and should have been suppressed. Appellant filed a pretrial motion to suppress
his statements, and the trial judge conducted a hearing on the motion. The hearing
consisted of the testimony of appellant and two police officers, Mehl and Bacon. The
judge denied the motion and filed findings of fact and conclusions of law. 
              We review a trial court’s ruling on a motion to suppress evidence for abuse of
discretion. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Taylor
v. State, 945 S.W.2d 295, 297 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d). In
reviewing a trial court’s ruling on a motion to suppress, we give almost total
deference to a trial court’s determination of historical facts, and we review de novo
the court’s application of the law. Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim.
App. 2002); see also Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
At a hearing to suppress evidence, the trial court is the sole judge of the weight and
credibility of the evidence; the trial court’s finding may not be disturbed on appeal
absent a clear abuse of discretion. Alvarado v. State, 853 S.W.2d 17, 23 (Tex. Crim.
App. 1993). A confession is admissible if the confession was freely and voluntarily
made. Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 2003). The United States
Supreme Court has stated, “[A] confession made by a person in custody is not always
the result of an overborne will. The police may be midwife to a declaration naturally
born of remorse, or relief, or desperation . . . .” Culombe v. Connecticut, 367 U.S.
568, 576, 81 S. Ct. 1860, 1864 (1961). Before we can determine that appellant’s
confession was involuntary, we must conclude that appellant was unable to make an
independent, informed choice of free will at the time the confessions were made. See
Jones v. State, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996). 
          Appellant argues that both his statement to Mehl and his statement to Bacon
were involuntary and were false because he was forced to fabricate his involvement
in the shooting to protect his wife, Davis. He claims that the officers repeatedly
threatened to charge his wife with a criminal offense and take her to jail if he did not
make a statement to them. His statements were not made voluntarily because he “felt
like [he] didn’t have any choice . . . but to give those statements.” Appellant testified
that he had not slept for over 24 hours prior to the time he gave the first of his two
statements. He contended that the circumstances of his confession put him in a state
where he “really was not thinking straight at all” and that he “really didn’t want [his
wife] to get a criminal offense.” 
          During the suppression hearing, Officer Mehl testified about appellant’s
confession, which was the first in-custody statement that appellant gave. When he
arrived at the police station, appellant’s handcuffs were removed. Prior to appellant’s
confession, Mehl read appellant his legal rights. Appellant stated he understood his
rights, and that he waived his rights. According to Mehl, appellant was alert and
intelligent, and did not appear to be under the influence of drugs. Prior to and during
Mehl’s recording of the confession, appellant neither requested an attorney nor
requested that the interview be terminated. In his confession, appellant explained that
he shot in the direction of José and Joey to scare them away because he mistook them
for car thieves. Mehl, who was unarmed during the encounter, testified that he did
not coerce appellant into giving the confession and that he did not promise appellant
anything in exchange for the confession. 
          Officer Bacon testified about the second in-custody statement appellant gave,
which concerned the whereabouts of the gun. Bacon read appellant his legal rights
twice: the first time was before the tape had begun recording and the second time
occurred during the recording. Appellant indicated that he understood his rights and
waived them. Appellant neither requested an attorney nor requested that the
interview be terminated. Bacon observed that appellant was alert, articulate, seemed
intelligent, and did not appear to be under the influence of drugs when he gave his
statement. Bacon testified that he did not coerce or threaten appellant to give this
statement and did not promise appellant anything in exchange for the statement.
          The judge is the sole trier of fact and judge of the weight and credibility of the
evidence. See Ballard v. State, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). Giving
almost total deference to the determination of these historical facts, we find no clear
abuse of discretion in his finding that the appellant’s statements were voluntary. 
          We overrule appellant’s second point of error.
Ineffective Assistance of Counsel
          In point of error three, appellant contends that he received ineffective
assistance of counsel at trial. Specifically, appellant contends that his trial counsel
was ineffective by (1) failing to request a Jackson v. Denno hearing


 on the
voluntariness of the consent to the search of appellant’s apartment; (2) failing to
object to incriminating hearsay evidence that was admitted during the State’s case-in-chief; and (3) failing to request a jury instruction in the jury charge on the
admissibility of appellant’s confession and his arrest. 
              Under Strickland v. Washington, to prevail on an ineffective assistance of
counsel claim, the applicant must show that (1) counsel’s performance was deficient
by falling below an objective standard of reasonableness and (2) there is a probability
sufficient to undermine the confidence in the outcome that but for counsel’s
unprofessional errors, the result of the proceeding would have been different. 466
U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Bone v. State, 77 S.W.3d 828, 833 (Tex.
Crim. App. 2002). We “indulge in a strong presumption that counsel’s conduct falls
within the wide range of reasonable assistance,” and that “the challenged action
‘might be considered sound trial strategy.’” Strickland, 466 U.S. at 689, 104 S. Ct. at
2065 (citing Michel v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)). 
          Appellate review of defense counsel’s representation is highly deferential and
presumes that counsel’s actions fell within the wide range of reasonable and
professional assistance. Id. The appellant must overcome this presumption. Gamble
v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Under
normal circumstances, the record on direct appeal will not be sufficient to show that
counsel’s representation was so deficient and so lacking in tactical or strategic
decision-making as to overcome the presumption that counsel’s conduct was
reasonable and professional. See Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim.
App. 1999). Rarely will the trial record contain sufficient information to permit a
reviewing court to fairly evaluate the merits of such a serious allegation: “[i]n the
majority of instances, the record on direct appeal is simply undeveloped and cannot
adequately reflect the failings of trial counsel.” Gamble v. State, 916 S.W.2d at 93
(quoting Thompson, 9 S.W.3d at 813-14).
              The first prong of Strickland is not met in the instant case for any of the three
sub-points cited by appellant to support this point of error. First, as explained above,
we find the record supports the trial court’s finding that the consent to search
appellant’s apartment was valid and voluntarily given. Therefore, trial counsel’s
failure to ask for a hearing concerning the consent to search was not a deficient
performance of his duties.



          Second, appellant does not cite any specific instances where trial counsel failed
to object to incriminating hearsay evidence that was admitted during the State’s case-in-chief. Appellant merely refers us generally to the second and fourth volume of the
reporter’s record, which together contain 200 pages of testimony. This court is not
required to sift through the record in search of support for appellant’s broad
assertions of error. See Tex. R. App. P. 38.1(h). Third, appellant offers no argument,
authority, or citation to the record to explain how counsel’s representation fell below
the standard of prevailing professional norms by trial counsel’s failure to request a
jury instruction. Conclusory arguments which cite no authority present nothing for
our review. See Vuong v. State, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992). 
Therefore, appellant’s claims relating to hearsay evidence and to a jury instruction are
inadequately briefed. See Tex. R. App. P. 38.1(h) (brief must contain a clear and
concise argument for the contentions made, with appropriate citations to authorities
and to the record); Rocha v. State, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000). Because
appellant’s arguments on this point of error contain no citations to the record, he has
waived appellate review of his complaint regarding the hearsay evidence and the jury
instruction. See Jensen v. State, 66 S.W.3d 528, 545 (Tex. App.—Houston [14th
Dist.] 2002, pet. ref’d). 
          We overrule point of error three. 
Sufficiency of the Evidence
A.      Legal Sufficiency
          In his fourth point of error, appellant asserts that the evidence was legally
insufficient to support his conviction. Specifically, appellant contends that the State
failed to prove beyond a reasonable doubt that appellant committed the offense of
manslaughter.
          To establish the felony of manslaughter, the State had to prove that appellant
recklessly caused the death of another. Tex. Pen. Code Ann. §19.04(a) (Vernon
Supp. 2004). A legal-sufficiency challenge requires us to determine whether, after
viewing the evidence in the light most favorable to the verdict, any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Howley v. State,
943 S.W.2d 152, 155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). As the
exclusive judges of the facts, the credibility of the witnesses, and the weight to be
given their testimony, the jurors may believe or disbelieve all or any part of a
witness’s testimony. Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App.
1981).
          Appellant contends that the evidence is legally insufficient to prove that he
committed the offense of manslaughter because (1) the only witness to the shooting,
José, testified that he could not identify appellant; (2) José could not say which way
the shooter ran or which apartment the shooter went into; (3) no gun was ever
recovered; (4) the State presented no probative evidence that appellant ever owned
a gun that could be matched to the shell casings; (5) Michael Lyons testified that the
tests of appellant’s hands and arms were inconclusive as to whether or not appellant
had recently fired a gun; (6) Joseph Matthews, who saw appellant turn off his car
alarm, did not see appellant in possession of a gun; and (7) Matthews testified that,
after the gunshots were fired, he heard steps going to the third floor, not the second
floor on which appellant’s apartment was located. At trial, the State presented the testimony of José, who was with Joey when he
was shot. José heard someone yell and heard two or three gunshots coming from the
direction of where a male was standing. Appellant’s apartment was located near the
same stairwell where José saw the man with a gun. Additionally, officers found spent
bullet casings on the ground in the general area below this stairwell.
          While in custody, appellant admitted that he shot at the car because was trying
to prevent someone from stealing his property. Appellant further admitted to another
officer that he disposed of the gun he used to shoot at Joey’s car shortly after the
incident.
          Viewing the evidence in the light most favorable to the verdict, a rational trier
of fact could have found that appellant was the man who shot and killed Joey. 
Accordingly, we hold that the evidence was legally sufficient to support appellant’s
conviction for manslaughter. 
          We overrule appellant’s fourth point of error.
B.      Factual Sufficiency
          In his fifth point of error, appellant contends that the evidence was factually
insufficient to support his conviction. 
          We review the factual sufficiency of the evidence by reviewing all of the
evidence neutrally, not in the light most favorable to the prosecution. Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual-sufficiency review, we
may not substitute our own judgment for that of the fact finder. Jones v. State, 944
S.W.2d 642, 648 (Tex. Crim. App. 1996). The Court of Criminal Appeals has
recently discussed the factual sufficiency standard: 
There is only one question to be answered in a factual-sufficiency
review: Considering all of the evidence in a neutral light, was a jury
rationally justified in finding guilt beyond a reasonable doubt? 
However, there are two ways in which the evidence may be insufficient. 
First, when considered by itself, evidence supporting the verdict may be
too weak to support the finding of guilt beyond a reasonable doubt. 
Second, there may be both evidence supporting the verdict and evidence
contrary to the verdict. Weighing all evidence under this balancing
scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so [that] the guilty
verdict should not stand. This standard acknowledges that evidence of
guilt can “preponderate” in favor of conviction but still be insufficient
to prove the elements of the crime beyond a reasonable doubt. Stated
another way, evidence supporting guilt can “outweigh” the contrary
proof and still be factually insufficient under a beyond-a-reasonable-doubt standard. 

Zuniga v. State, No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 21,
2004). We must consider the most important evidence that appellant claims
undermines the jury’s verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App.
2003). 
          Appellant contends the evidence is factually insufficient because (1) the only
witness to the shooting, José, testified that he could not identify appellant; (2) José
could not say which way the shooter ran or which apartment he went into; (3) no gun
was ever recovered; (4) no probative evidence was presented that appellant ever
owned a gun that could be matched to the shell casings; (5) Michael Lyons testified
that the test of appellant’s hands and arms were inconclusive as to whether or not
appellant had recently fired a firearm; (6) Joseph Matthews, who saw appellant turn
off his car alarm, did not see appellant in possession of a gun; and (7) Matthews
testified that, after the gunshots were fired, he heard steps going to the third floor, not
the second floor on which appellant’s apartment was located. 
          Appellant’s identity as the shooter is established by his own admission to
shooting at Joey’s car and disposing of the gun at the bayou near his apartment. The
essence of appellant’s complaints concern the lack of other evidence to establish his
identity as the shooter. A rational jury could have concluded that appellant’s
confession was credible, thereby disposing of the need for other evidence to
corroborate the confession. 
          Although the State’s witness, Michael Lyons, testified that the test of
appellant’s arms and hands was inconclusive as to whether or not appellant fired a
gun, he also testified that an inconclusive test is the standard result and that actions
such as washing your hands can affect the test. Another witness testified that even
wiping your hands on your clothing can render the results of the test inconclusive.
          The defense called Joseph Matthews, appellant’s neighbor, who saw appellant
turn off his car alarm in the early morning hours of September 1, 2002, but did not see
appellant in possession of a gun. Matthews heard the footsteps of someone walking
up the stairwell to the third floor, higher than the second floor apartment that
appellant lived in. However, on cross-examination, the State impeached Matthews
with prior inconsistent statements regarding whether he had spoken to the police
concerning this incident and whether he heard gunshots that night. 
          A jury decision is not manifestly unjust merely because the jury resolved
conflicting views of evidence in favor of the State. Cain v. State, 958 S.W.2d 404,
410 (Tex. Crim. App. 1997). The determination of what weight to give contradictory
testimonial evidence is within the sole province of the jury, as it turns on an
evaluation of credibility and demeanor. Id. at 408-09. Thus, the jury was free to
believe all or any part of the testimony of the State’s witnesses, and disbelieve all or
any part of the testimony of appellant. A court of appeals must show deference to
such a jury finding. Id. at 409. 
          Examining all of the evidence neutrally, we conclude that the proof of guilt was
not so obviously weak as to undermine confidence in the jury’s determination; nor
was the contrary evidence so strong that it greatly outweighed the proof of guilt. 
Accordingly, we overrule appellant’s fifth point of error. 
CONCLUSION
          We affirm the judgment of the trial court.
 
 
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Alcala.
Do not publish. Tex. R. App. P. 47.2(b).