Opinion issued November 18, 2004








 





     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00456-CR




STEVEN T. JOHNSON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause No. 899,185




MEMORANDUM OPINION
          Steven T. Johnson, appellant, pleaded not guilty to aggravated robbery. The
jury found him guilty and assessed punishment at 30 years’ confinement. In five
points of error, appellant contends that (1) the evidence is legally insufficient to
support his conviction; (2) the trial court abused its discretion by denying him a
mistrial; (3) the trial court erred in denying his motions to suppress evidence; and (4)
the trial court erred in allowing appellant’s in-court identification because of a
suggestive pretrial line-up. We affirm.
                                                    BACKGROUND
          On January 10, 2002, Georgiana Gates, the complainant, got into her car to
drive to work and placed her purse on the front seat. Before starting the car, Gates
got out to wipe dew off the windshield when she noticed appellant standing next to
her car. Appellant, while pointing a gun at her head, told her to “turn around, don’t
look at me or I’ll kill you.” Nevertheless, she got a “good view” of appellant for ten
to fifteen seconds. Appellant demanded that Gates lie down behind the garage and
count to four hundred. After she reached four hundred, Gates went back to her car
to discover that her purse was missing. Two days later, on January 12, Gates
identified appellant in a line-up at the police station.
          In the early morning hours of January 13, Houston Police Officer X. Abad saw
appellant’s white Cadillac in southwest Houston, which fit the description of a car
suspected in a string of robberies earlier that evening in the same general area. When
the officer contacted the police dispatcher, he learned that the car’s license plate
matched a partial number taken off a similar car involved in a recent robbery. When
more officers arrived, some officers stopped the white Cadillac, while other officers
identified and placed appellant and the other two men who were sitting in the car in
custody. Several stolen identifications were found in the white Cadillac.
          Officer S. Guerra took appellant out of his jail cell to speak with him in an
interviewing area and read appellant his legal rights. Appellant then discussed his
involvement in committing robbery with two other men, while Guerra typed what
appellant told him. About four hours later, Officer J. Padilla read appellant his legal
rights again before appellant gave another statement regarding his role in many
robberies as the driver of the white Cadillac.Legal Sufficiency
          In his first point of error, appellant asserts that the evidence was legally
insufficient to support his conviction. Specifically, appellant contends that the State
failed to prove beyond a reasonable doubt that appellant committed aggravated
robbery.
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). As the exclusive judges of the
facts, the credibility of the witnesses, and the weight to be given their testimony, the
jurors may believe or disbelieve all or any part of a witness’s testimony. Penagraph
v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).
          A person commits the offense of aggravated robbery if that person (1) in the
course of committing theft, (2) with intent to obtain and maintain control of property,
(3) knowingly and intentionally, (4) threatens or places another in fear of imminent
bodily injury or death, and (5) then and there uses or exhibits a deadly weapon. Tex.
Pen. Code Ann. § 29.03(a) (Vernon Supp. 2004-2005).
          Appellant contends the evidence is legally insufficient to prove that he
committed the offense of aggravated robbery because (1) Gates is the only witness
to the alleged robbery; (2) Gates’s identification of her assailant lacked merit because
she was wearing trifocal lenses; (3) law enforcement officials did not attempt to
obtain fingerprints from inside Gates’s car; and (4) Gates’s line-up identification of
appellant was unreliable because none of the participants wore a baseball cap at the
line-up as the assailant did during the crime.
          Although Gates was the only witness to the robbery, this does not render the
evidence insufficient. It is well established that a conviction may be based on the
testimony of a single eyewitness. Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim.
App. 1971); Lewis v. State, 126 S.W.3d 572, 575 (Tex. App.—Texarkana 2004, pet.
ref’d). Although Gates wore trifocals on the morning of the robbery, she was
nonetheless able to positively identify appellant in a lineup that included appellant
and seven other people with similar physical characteristics as appellant. The jury
found appellant guilty. The determination of what weight to give testimonial
evidence is within the sole province of the jury, as it turns on an evaluation of
credibility and demeanor. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App.
1997). Thus, the jury was free to believe all or any part of the testimony of the State’s
witnesses, and disbelieve all or any part of the witness testimony. A court of appeals
must show deference to such a jury finding. Id. at 409. Appellant has not shown how
the fact that Gates wore trifocals affected the reliability of her identification. Under
the circumstances, we properly leave to the jury the weight to give Gates’s testimony. 

          The property appellant was convicted of appropriating was not Gates’s car, but
her purse. To convict appellant for the charged offense, the State was not required
to prove that appellant entered Gates’s car. Tex. Pen. Code Ann. § 29.03(a) (Vernon
Supp. 2004-2005). No element of the charged offense would have been proved by
the State’s admitting evidence that appellant’s fingerprints were found on the inside
of the car. Therefore, the evidence is not rendered legally insufficient by the State’s
failure to dust for appellant’s fingerprints in Gates’s car. 
          At trial, Officer Guerra admitted that none of the participants in the line-up
from which Gates identified appellant wore a hat, despite Gates’s testimony that her
assailant had worn a baseball cap at the time of the robbery. However, Gates
described her assailant as having black hair, and each of the men in the lineup had
black hair. At trial, Gates testified that, despite appellant’s admonition that he would
kill her if she looked at him, she got a “good view” of his face from a “full face view”
for about ten to fifteen seconds. She explained that she was thinking she “better take
a really good look at him because [she] might have to – to just – have to identify him
at some point.” In court, she positively identified appellant as the individual who
stood no more than two feet away from her when he robbed her in daylight. This
testimony was sufficient to establish Gates’s identification of appellant as the person
who intentionally threatened or placed her in fear of imminent bodily injury or death. 
See Aguilar, 468 S.W.2d at 77.
          Viewing the evidence in the light most favorable to the verdict, a rational trier
of fact could have found that appellant committed robbery while using or exhibiting
a deadly weapon. Accordingly, we hold that the evidence was legally sufficient to
support appellant’s conviction for aggravated robbery. 
          We overrule appellant’s first point of error.
Motion for Mistrial
          In his second point of error, appellant contends that the trial court abused its
discretion by denying appellant’s motion for mistrial, alleging that the State
repeatedly introduced evidence of extraneous offenses, even after the court
admonished the State, and that the trial court’s instruction to the jury was not
sufficient to cure the error. 
          The standard of review for a trial court’s denial of a motion for mistrial is abuse
of discretion. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). A mistrial
is a device used to halt trial proceedings when error is so prejudicial that expenditure
of further time and expense would be wasteful and futile. Thus, a trial court may
properly exercise its discretion to declare a mistrial if a verdict of conviction could
be reached, but would have to be reversed on appeal due to an obvious procedural
error. Sewell v. State, 696 S.W.2d 559, 560 (Tex. Crim. App. 1983). The
determination of whether a given error necessitates a mistrial must be made by
examining the particular facts of the case. Hernandez v. State, 805 S.W.2d 409, 414
(Tex. Crim. App. 1990). The introduction of extraneous offenses to the jury is
inherently prejudicial and harms the defendant because it requires the defendant to
defend against not only the offense charged, but also his uncharged actions. Abdnor
v. State, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994). The asking of an improper
question, however, will seldom call for a mistrial, because, in most cases, any harm
can be cured by an instruction to disregard. Id. A mistrial is required only when the
improper question is clearly prejudicial to the defendant and is of such character as
to suggest the impossibility of withdrawing the impression produced on the minds of
the jurors. Id.
          The record reflects the following exchange at trial between the State and
Officer Guerra on redirect examination: 
State: Officer, were you present in the room when the line-up was
conducted?
                    Officer: Yes, I was recording the line-up.
State: Were there any facial expressions or anything in that room that
would suggest to Ms. Gates who to pick up?
                    Officer: No, ma’am. 
                    State: What’s the purpose of a lineup?
Officer: The purpose of a lineup is to either identify a suspect in a case
or eliminate them.
                    Q: Why were these participants asked to say something?
                    Officer: In other related cases -- 

Before the witness could finish his answer, appellant objected on Texas Rule of
Evidence 403 and Rule 404(b) grounds, asked for an instruction to disregard, and
moved for a mistrial. See Tex. R. Evid. 403, 404(b). The trial court sustained the
objection and instructed the jury to disregard the question, but the court denied the
motion for a mistrial. The trial court instructed the jury:
Ladies and gentlemen, the last statement made, any quote 
related -- we are not talking about any related offenses at 
all. We are talking about Ms. Gates’ case and Ms. Gates’ 
case alone. Don’t even think there are any other related 
cases out there. That is not your concern. That’s not 
relevant to this matter one bit. Not one person who goes 
back there when you discuss this case will talk about, well, 
I wonder if there are any other related cases concerning the 
lineup. There are none for you to consider at all. Anyone 
says that, you tell me. I will grant a mistrial and we will 
stop right there, bring another jury in and try the case the 
way it should be tried. Do you understand that? Please 
follow the instructions closely. 
              We discern no abuse of discretion in the trial court’s denial of the motion for
a mistrial. The question itself did not actually address extraneous offenses, but asked
why the participants were asked to speak . The officer’s answer began “in other
related cases,” but, because appellant’s trial counsel timely objected, the witness’s
answer could have been the beginning of a discussion explaining why participants are
asked to speak up at line-ups generally in criminal offenses. Because the reference
did not directly implicate the appellant, we cannot say that the harm was so
prejudicial that it could not be cured by the trial court’s instruction to disregard the
testimony. See Kipp v. State, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994) (holding
that reference to an extraneous offense was not prejudicial because it was “a rather
vague reference, did not directly implicate appellant, and did not include any facts
giving credence thereto.”). The trial court could have reasonably concluded that the
question or its answer was not so inflammatory as to be incurable by an instruction
to disregard, and thus, it did not abuse its discretion. 
          Accordingly, we overrule point of error two.
Motion to Suppress Evidence
          In his third point of error, appellant asserts that the trial court erred in denying
his motion to suppress evidence. Specifically, appellant contends that the evidence
was the “fruit” of his warrantless arrest for which the arresting officer had no
probable cause, in violation of the Texas Code of Criminal Procedure. Tex. Code
Crim. Proc. Ann. art. 14.03, 38.23 (Vernon Supp. 2004-2005). 
          We review a trial court’s ruling on a motion to suppress evidence for abuse of
discretion. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Taylor
v. State, 945 S.W.2d 295, 297 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d). In
reviewing a trial court’s ruling on a motion to suppress, we give almost total
deference to a trial court’s determination of historical facts, and we review de novo
the court’s application of the law. Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim.
App. 2002); see also Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
At a hearing to suppress evidence, the trial court is the sole judge of the weight and
credibility of the evidence; the trial court’s finding may not be disturbed on appeal
absent a clear abuse of discretion. Alvarado v. State, 853 S.W.2d 17, 23 (Tex. Crim.
App. 1993). If the trial court did not make explicit findings of historical fact, we
review the evidence in a light most favorable to the trial court’s ruling. See State v.
Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999); State v. Munoz, 991 S.W.2d
818, 821 (Tex. Crim. App. 1999). In other words, we will assume that the trial court
made implicit findings of fact supported in the record that buttress its conclusion. We
will review de novo the lower court’s application of the relevant law to the facts. 
Guzman, 955 S.W.2d at 89.
          Circumstances short of probable cause may justify a temporary investigative
detention. Terry v. Ohio, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879 (1968); Stone v. State,
703 S.W.2d 652, 654 (Tex. Crim. App. 1986). A police officer may make a
temporary investigative detention of an individual if the officer has a reasonable
suspicion that some activity out of the ordinary is occurring or has occurred, some
suggestion to connect the detainee with the unusual activity, and some indication that
the activity is related to a crime. Stone, 703 S.W.2d at 654. The test for reasonable
suspicion is a factual one and is made and reviewed by considering the totality of the
circumstances at the time of the stop. Loesch v. State, 958 S.W.2d 830, 832 (Tex.
Crim. App. 1997). Reasonable suspicion exists if the officer has specific articulable
facts that, when combined with rational inferences from those facts, would lead him
to reasonably suspect that a particular person has engaged in, or is or soon will be
engaged in, illegal conduct. Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App.
2001). A patdown is justified during an investigative detention when an officer can
point to “specific and articulable facts which reasonably lead him to conclude that the
suspect might possess a weapon.” Carmouche v. State, 10 S.W.3d 323, 329 (citing
Terry, 392 U.S. at 26-27, 88 S. Ct. at 1882-83). A protective sweep is also justified
for “the protection of the police officer and others nearby, and it must therefore be
confined in scope to an intrusion reasonably designed to discover guns, knives, clubs,
or other hidden instruments for the assault of the police officer.” See Terry, 392 U.S.
at 29, 88 S. Ct. at 1884.
          Probable cause to arrest exists when the facts and circumstances within the
officer’s knowledge, and of which the officer had reasonably trustworthy information,
were sufficient to warrant a prudent man in believing that the suspect had committed
or was committing an offense. Lunde v. State, 736 S.W.2d 665, 667 (Tex. Crim. App.
1987) (citing Beck v. Ohio, 379 U.S. 89, 85 S. Ct. 223 (1964)); Cornejo v. State, 917
S.W.2d 480, 482-83 (Tex. App.—Houston [14th Dist.] 2004, no pet.). A Texas police
officer may arrest, without a warrant, individuals found in suspicious places and
under circumstances which reasonably show, among other things, that they have been
guilty of some felony or breach of the peace, or that they threaten or are about to
commit some offense against the laws. Tex. Code Crim. Proc. Ann. art. 14.03(a)
(Vernon Supp. 2004-2005). 
          At a pretrial suppression hearing, appellant sought to have all evidence
obtained after his arrest suppressed for lack of probable cause. The trial court denied
appellant’s motion to suppress any of the evidence. Specifically, appellant argues
that the facts did not rise to the level of probable cause to permit his warrantless arrest
after the initial traffic stop of appellant’s car.
          At the hearing, Officer Abad testified concerning the circumstances and events
that led to appellant’s arrest. According to Abad, appellant’s car, a white Cadillac,
fit the description of the car suspected in the robberies, the last of which occurred
only a few hours before Abad saw the car. The license plate of the white Cadillac,
in which appellant and two other males were sitting, matched a partial plate seen on
a car reportedly used in the robberies. The robberies occurred in close proximity to
one another in southwest Houston. The nightclub’s parking lot, in which Abad saw
the white Cadillac parked, was in the same geographic area as the robberies for which
the car was suspected of being used. The officers conducted a felony traffic stop
without incident. The officers were justified in temporarily detaining appellant, as
they had reasonable suspicion that the three occupants of the car had been engaged
in illegal conduct. 
          During appellant’s detention, the officers performed a patdown search of
appellant, which was justified as appellant was found in a car with a license plate that
matched a similar car used in a string of armed robberies. The officers, thus, had
specific and articulable facts that reasonably led them to conclude that appellant
might have engaged in the robberies and might possess a weapon, thereby justifying
a patdown of appellant and a protective sweep of the car in which he was sitting. 
When the officers performed a protective sweep of the car, they found stolen
identification cards that purportedly belonged to robbery victims. The information
available to the police at the time of the arrest established probable cause because
appellant was found in a suspicious place under circumstances which reasonably
show him to be guilty of a felony. Tex. Code Crim. Proc. Ann. art. 14.03(a).
          Although Abad admitted that the officers arrested appellant based on the fact
that he had been sitting in the car, not on any description of the suspected assailants
involved in a string of robberies, this does not indicate a lack of probable cause to
arrest appellant under these circumstances. See Cornejo, 917 S.W.2d at 483-84. 
Accordingly, the trial court did not err by denying the motion to suppress.
          We overrule appellant’s third point of error.
Voluntariness of Statements 
          In his fourth point of error, appellant asserts that his two in-custody statements
were not voluntarily given and should have been suppressed. Appellant contends he
was told that if he did not sign the statements, he would “get more time from the
[j]udge.” He claims that the officers typed the statements and he was compelled to
sign them involuntarily. Appellant filed a pretrial motion to suppress his statements,
and the trial judge conducted a hearing on the motion. The hearing consisted of the
testimony of appellant as well as of Officers Guerra and Padilla. The judge denied
the motion and filed findings of fact and conclusions of law. 
          As noted above, we review a trial court’s ruling on a motion to suppress
evidence for abuse of discretion. Villarreal, 935 S.W.2d at 138; Taylor, 945 S.W.2d
at 297.
          During the suppression hearing, Officer Guerra testified about the first
statement that appellant gave in custody. Guerra testified that he did not, directly or
indirectly, promise appellant anything in exchange for the statement. Guerra also said
he did not deprive appellant of water or use of the restroom before, during, or after
he made the statement. Guerra explained that he told appellant that he could make
alterations, deletions, or additions to the statement, but that appellant chose not to do
so. According to Guerra, at no time during the taking of appellant’s statement did he
appear pressured in any way.
          Officer Padilla testified at the suppression hearing regarding appellant’s second
in-custody statement. Padilla testified that, after appellant made the second
statement, Padilla gave him an opportunity to alter and make additions to the
statement, but appellant declined to do so. Padilla stated that appellant told him that
the statement was true and correct. 
          In written findings of fact, the trial court stated that the police officers testified
that (1) both Officer Guerra and Officer Padilla read appellant his constitutional and
statutory rights pursuant to article 38.22, section 2, of the Texas Code of Criminal
Procedure; (2) appellant indicated that he understood and waived those rights; (3)
appellant was, at the time he made both statements, “sober, alert, and was not
mentally impaired”; (4) appellant reviewed both statements before signing each of
them; (5) appellant never invoked any of his constitutional or statutory rights before
or after completing either statement; (6) appellant never requested counsel; (7) no one
coerced or threatened appellant to make either statement, or promised appellant
anything in exchange for either statement; (8) appellant’s statements “were the
product solely of his desire to make them and were not influenced by any of the
events surrounding the detention or arrest”; (9) the court found the officers who
testified at the pretrial hearing to be credible, while it did “not find the defendant’s
testimony to be credible.”
          The judge is the sole trier of fact and judge of the weight and credibility of the
evidence. See Ballard v. State, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). Giving
almost total deference to the trial court’s determination of these historical facts, we
find no clear abuse of discretion in the finding that the appellant’s statements were
voluntary. Accordingly, the trial court did not abuse its discretion by denying
appellant’s motion to suppress his in-custody statements.
          We overrule appellant’s fourth point of error. 
In-Court Identification
          In his fifth point of error, appellant contends the trial court erred in admitting
an in-court identification because it was based on an impermissibly suggestive
pretrial line-up.
          We defer to a trial court’s determination of historical facts supported by the
record when the trial court finds facts based upon an evaluation of the credibility and
demeanor of the witnesses. Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App.
1998). We similarly defer to the trial court’s rulings on mixed questions of law and
fact when they turn on the credibility of witnesses. Id. We review de novo, however,
mixed questions of law and fact that do not turn on an evaluation of credibility and
demeanor. Id. at 772-73. Here, the admission of the in-court identification does not
turn on a credibility evaluation and, therefore, we review it de novo.
          In-court identifications are inadmissable when tainted by an unduly suggestive
pretrial identification. Id. at 771-72. To determine whether a trial court correctly
admitted an in-court identification, we employ a two-step analysis, and determine (1)
whether the pretrial identification was impermissibly suggestive, and, if so, (2)
whether the suggestive pretrial identification gave rise to a substantial likelihood of
irreparable misidentification at trial. Loserth v. State, 985 S.W.2d 536, 543-44 (Tex.
App.—San Antonio 1999, pet. ref’d) (on remand). In order for an in-court
identification to be inadmissible, an appellant must demonstrate the existence of both
elements by clear and convincing evidence. Id. 
          Neither due process nor common sense requires that the individuals in a lineup
exhibit features exactly matching the accused. Turner v. State, 600 S.W.2d 927, 933
(Tex. Crim. App. 1980); Colgin v. State, 132 S.W.3d 526, 532 (Tex. App.—Houston
[1st Dist.] 2004, pet. ref’d). Rather, a photo array must contain individuals who fit
a rough description of the suspect. Wilson v. State, 15 S.W.3d 544, 553 (Tex.
App.—Dallas 1999, pet. ref’d). There is no standard as to the similarities required
of the subjects used in a pretrial identification procedure, only that there not be a
likelihood of irreparable misidentification. See Clay v. State, 702 S.W.2d 747, 749
(Tex. App.—San Antonio 1985, pet. ref’d).
          Here, appellant contends that the line-up was impermissibly suggestive because
it did not exactly replicate the condition of the assailant’s apparel, as he wore a
baseball cap at the time he committed the offense. According to Officer Guerra, none
of the participants in the line-up wore a baseball cap during the pretrial identification. 
However, Officer Padilla testified that the participants in the line-up were all of the
same racial group, all had the same hair color, and all had the same general size and
build. While subjects in a photographic array do not need to be identical, their
similarities in appearance should provide a reasonable test for the witness’s capacity
to reliably identify the perpetrator. Escovedo v. State, 902 S.W.2d 109, 117 (Tex.
App.—Houston [1st Dist.] 1995, pet. ref’d) (holding that six-person photographic
array was not unduly suggestive where only one other photograph besides appellant’s
had a tear drop tattoo by the eye); Ford v. State, 794 S.W.2d 863, 866 (Tex. App.—El
Paso 1990, pet. ref’d) (differences in hair lengths were not suggestive); Buxton v.
State, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985) (pretrial lineup was not unduly
suggestive, even though height, weight, and skin tone of individuals in lineup varied). 
          The individuals participating in the line-up fit the rough description of
appellant, although none of them, including appellant, was wearing a baseball cap. 
We hold that the line-up was not impermissibly suggestive and did not constitute an
unfair lineup. See Wilson, 15 S.W.3d at 553. Because we conclude that the pretrial
identification procedures were not impermissibly suggestive, we need not address
whether those procedures created a substantial likelihood of misidentification. See
Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).
          We overrule appellant’s fifth point of error. 
CONCLUSION
          We affirm the judgment of the trial court.
 
 
 
                                                             Sherry Radack
                                                             Chief Justice
 

Panel consists of Chief Justice Radack and Justices Keyes and Alcala.
Do not publish. Tex. R. App. P. 47.2(b).