MEMORANDUM OPINION




No. 04-02-00899-CR



Jesse Lamen ALVAREZ,


Appellant



v.



The STATE of Texas,


Appellee



From the 226th Judicial District Court, Bexar County, Texas


Trial Court No. 98CR6627


Honorable Sid L. Harle, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Alma L. López, Chief Justice

 Paul W. Green, Justice

 Karen Angelini, Justice


Delivered and Filed: June 23, 2004


AFFIRMED

 Appellant Jesse L. Alvarez was indicted for possession of a controlled substance with the
intent to deliver. He filed a motion to suppress, which the trial court heard and denied. Alvarez then
pled guilty and was sentenced to twenty-five years imprisonment in accordance with his plea-bargain
agreement. Alvarez appeals, arguing that the trial court erred in denying his motion to suppress. We
affirm.

Background

 On September 22, 1998, a confidential informant told San Antonio Police Officer Richard
Funk that Alvarez was engaging in drug trafficking and that he had seen Alvarez in possession of
heroin in the past twenty-four hours. Officer Funk had worked with this confidential informant three
or four times in the past. Each time, the information was reliable. The informant told Officer Funk
Alvarez's address, name, and his approximate age. Officer Funk confirmed this information on his
computer. In addition, the informant described the manner in which Alvarez would make the drug
transaction--by selling heroin out of his backyard.

 After establishing visual surveillance, Officer Funk witnessed a vehicle pull up and park near
Alvarez's residence. The passenger approached the back gate of Alvarez's residence. Alvarez was
seated in a chair in his backyard. Alvarez approached the passenger, who remained standing on the
outside of the gate. According to Officer Funk, the passenger and Alvarez talked and their hands
made contact briefly. The passenger then got back into his car and drove away. The total transaction
lasted about a minute. Although Officer Funk did not see an actual exchange of objects between the
passenger and Alvarez, Officer Funk testified that there was a brief transaction, and that in his
professional experience it was a narcotics transaction. He listed the following reasons why he believed
the informant's information was true and correct: the manner in which the vehicle was parked, the
fact that it did not park directly in front of the residence, but a little down the street, and the fact that
Alvarez stayed inside the gate and the passenger remained outside the gate.Hoping to find a better location for surveillance, Officer Funk drove around the block. When
he returned to Alvarez's home about two minutes later, Alvarez's vehicle was gone. Officer Funk
then drove around the area, looking for Alvarez's car. About an hour later, Officer Funk saw
Alvarez's car parked in his driveway in front of a gate. Alvarez was opening the gate so that he could
drive his car through it. As Alvarez was about to get back into his car, Officer Funk pulled up in an
unmarked car. Officer Funk, wearing plain clothes, called Alvarez by his first name "Jesse." When
Alvarez turned, Officer Funk said, "police officer" and showed Alvarez his badge. Officer Funk's
intention was to confront Alvarez about the narcotics transaction that had taken place earlier and to
gather more information. However, before Officer Funk could say anything, Alvarez "turned to run
inside his gate." At that point, Officer Funk grabbed him from behind and Alvarez's momentum
dragged Officer Funk into the gated area where he and Alvarez fell on the concrete driveway. As
Officer Funk was attempting to handcuff Alvarez, Alvarez reached into his top shirt pocket and
tossed a package toward a barking dog that was chained at the corner of his home. After Officer Funk
handcuffed Alvarez, another police officer arrived. The other police officer picked up the package
that Alvarez had thrown away. The package, an empty cigarettes container, had 63 balloons of heroin
inside. 

Alvarez filed a motion to suppress physical evidence obtained as a result of a warrantless
arrest. The trial court denied his motion. Alvarez appeals.

Motion to Suppress


 In his sole issue, Alvarez argues that the trial court should have granted his motion to
suppress because Officer Funk lacked probable cause to arrest him and because Officer Funk arrested
him without first obtaining a warrant. We review the trial court's ruling on a motion to suppress for
abuse of discretion. Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). Under this
standard, we afford almost total deference to a trial court's determination of historical facts supported
by the record, especially when the findings are based on an evaluation of credibility and demeanor.
Id. We afford the same amount of deference to a trial court's ruling on "application of law to fact
questions," also known as "mixed questions of law and fact," if the resolution of those ultimate
questions turns on an evaluation of credibility and demeanor. Id. We, however, may review de novo
"mixed questions of law and fact" not falling within this category. Id. 

 As a general rule, an officer may arrest an individual only upon a valid arrest warrant.
However, certain exceptions exist. An officer may arrest an individual without a warrant if (a) there
is probable cause with respect to that individual, and (b) the arrest falls within one of the exceptions
specified in chapter 14 of the Code of Criminal Procedure. Stull v. State, 772 S.W.2d 449, 451 (Tex.
Crim. App. 1989). Probable cause exists "when the facts and circumstances within the officer's
personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant
a person of reasonable caution in the belief that, more likely than not, a particular suspect has
committed a crime." Muniz v. State, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993); see also
Covarrubia v. State, 902 S.W.2d 549, 553 (Tex. App.Houston [1st Dist.] 1995, pet. ref'd). To
determine whether probable cause exists, we "must look to the totality of the circumstances." Adkins
v. State, 764 S.W.2d 782, 785 (Tex. Crim. App. 1988). 

 According to Alvarez, Officer Funk lacked probable cause to arrest him. Specifically, Alvarez
emphasizes that at the time Officer Funk approached Alvarez, he already intended to put Alvarez
under arrest. Alvarez argues that at that point there was no probable cause, only the officer's belief
of what Alvarez might have done. Indeed, an "investigating officer's mere suspicion, hunch or good
faith perception, without more, is insufficient to constitute probable cause for an arrest." Adkins, 764
S.W.2d at 785 (internal quotation marks omitted). Thus, we must determine by examining the totality
of the circumstances whether Officer Funk had more than a "mere hunch."

 In Lunde v. State, 736 S.W.2d 665 (Tex. Crim. App. 1987), the court of criminal appeals
decided a case with similar facts. Relying on an informant's tip, two officers set up surveillance and
soon witnessed a drug transaction. Id. at 666. Although neither officer could see what, if anything,
was passed between the two men, based upon their experience and training, the officers were of a
firm opinion that a drug transaction had taken place. Id. "A pat-down and search of the two men for
weapons and narcotics resulted in discovery in appellant's shirt pocket of a cigarette package
containing a tinfoil of heroin in the outside cellophane covering the package." Id. The court held that
the warrantless arrest of the suspects was proper:

 Even though neither officer could testify as to overt observation of a substance or
even packaging or money, both [officers] were firm in their testimony that in their
professional opinion, based on the particular circumstances and their knowledge of
similar drug deals, that a transaction was taking place as they watched appellant.
Given the officers' experiences in recognizing drug trafficking, the corroborated
information received, the actions of appellant and his accomplice at the scene, and the
officers' certainty that a normally covert transfer was being made between appellant
and the black man, as shown by the close proximity and hand movements of the two
men, we find that the officers had probable cause to believe that an offense . . . was
being committed. The arrest being valid, the subsequent search incident to the arrest
was also valid.


Id. at 667-68 (citations omitted). Similarly, here, Officer Funk received corroborated information
which included the location, name and description of the suspect and the manner of the transaction.
Officer Funk observed Alvarez engaging in a described conduct which Officer Funk believed, based
upon years of experience and training, to be a drug transaction. Although the encounter standing
alone could be an innocent one, Officer Funk could have reasonably believed, based on the additional
information supplied by the confidential informant, that a crime was being committed within his view.
Therefore, under Lunde, the trial court did not abuse its discretion in finding that Officer Funk had
probable cause to arrest Alvarez without a warrant. Id.; see Tex. Code Crim. Proc. Ann. art.
14.01(b) (Vernon 1977).

 Alvarez stresses that Officer Funk gave conflicting testimony and that he admitted lacking
probable cause to arrest Alvarez at the time he approached Alvarez for further investigation. At the
suppression hearing, Officer Funk testified, "[B]ased on what I observed, I did not have probable
cause to believe that that was a narcotics transaction based on that single incident." However, he also
testified, "I did have probable cause based on informant's information coupled with the activity that
I observed." Additionally, Officer Funk testified that he "had enough cause for a search warrant, not
the arrest warrant." When asked what he believed the nature of the transaction to be based upon his
experience, Officer Funk answered, "[A] narcotics transaction." 

 "Fourth Amendment protection requires that courts apply an objective standard in judging the
officer's conduct." Klingler v. United States, 409 F.2d 299, 303 (8th Cir. 1969).

Because probable cause for an arrest is determined by objective facts, it is
immaterial that [the officer], at the hearing on the motion to suppress, testified
that he did not think that he had "enough facts" upon which to arrest [the
suspect] for armed robbery. His subjective opinion is not material. See Terry v.
Ohio, 392 U.S. 1, 22 (1968). . . . Objectively, the facts known to [the officer]
prior to the arrest and search met the standard of probable cause.


Id. at 304-05. Also in Warren v. City of Lincoln, 864 F.2d 1436, 1439 (8th Cir. 1989) (en banc), the
Eighth Circuit noted that the officers "testified that they believed they lacked probable cause to arrest
[the suspect] for attempted burglary. Such testimony, however, does not end the inquiry, for it is
well-settled that the test of probable cause is not the articulation of the policeman's subjective theory
but the objective view of the facts." Id. at 1439 (citations omitted) (internal quotation marks omitted).
"[A]lthough the officers believed they possessed only a reasonable suspicion that [the suspect] was
involved in the attempted burglary, a court nevertheless may conclude that there was in fact probable
cause." Id. at 1440. 

 In addition, the Supreme Court has held that "the fact that the officers did not believe there
was probable cause and proceeded on a consensual or Terry-stop rationale would not foreclose the
State from justifying [the defendant]'s custody by proving probable cause and hence removing any
barrier to relying on [the defendant]'s consent to search." Florida v. Royer, 460 U.S. 491, 507
(1983). Hence, Officer Funk giving conflicting testimony about whether he had probable cause to
arrest does not preclude us from determining that he did in fact have probable cause to arrest Alvarez.Even if we were to find that Officer Funk did not have probable cause to arrest Alvarez when
he approached Alvarez in his driveway, Office Funk, based on the totality of the circumstances, did
have reasonable suspicion to stop Alvarez for a temporary investigative detention, i.e. a Terry stop. 

 When reviewing an investigative detention under either state or federal law, it is
accepted that law enforcement officials may stop and briefly detain persons suspected
of criminal activity on less information than is constitutionally required for probable
cause to arrest. Nevertheless, even a temporary detention of this kind is not
permissible unless the circumstances upon which the officers rely objectively support
a reasonable suspicion that the person detained actually is, has been, or soon will be
engaged in criminal activity. An investigative detention is a confrontation of a citizen
by law enforcement officers wherein the citizen yields to a display of authority and is
temporarily detained for purposes of an investigation.


 Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) (citations omitted) (internal
quotation marks omitted). Once Alvarez fled after being informed that Funk was a police officer,
Officer Funk had probable cause to arrest him without a warrant for fleeing from a police officer. See
Rue v. State, 958 S.W.2d 915, 918 (Tex. App.--Houston [14th Dist.] 1997, no pet.) (holding that
officer who was validly attempting to question appellant about possible criminal activity had probable
cause to arrest appellant without a warrant once appellant evaded the lawful detention); Covarrubia
v. State, 902 S.W.2d 549, 554 (Tex. App.--Houston [1st Dist.] 1995, pet. ref'd) (holding that once
suspect fled from officers who were lawfully attempting to detain him for the purpose of investigating
possible criminal activity, the officers had probable cause to arrest appellant for intentionally fleeing
from a police officer). (1)

 We overrule Alvarez's sole issue.

Conclusion
 

 Because the trial court did not abuse its discretion in denying Alvarez's motion to suppress,
we affirm the judgment of the trial court.


 Karen Angelini, Justice


Do not publish








 


1. The State argues that Officer Funk did not violate article 14.05 of the Texas Code of Criminal Procedure
when he arrested Alvarez. In reviewing Alvarez's brief, we do not believe that Alvarez has properly put this issue
before us. However, even if Alvarez had argued that Officer Funk violated article 14.05, we would overrule that issue.
Article 14.05 prohibits an officer from entering a residence to make a warrantless arrest unless the resident consents
to his entry or exigent circumstances require the officer making the arrest to enter the residence. Tex. Code Crim.
Proc. Ann. art. 14.05 (Vernon Supp. 2004). An officer's hot pursuit of an offender seeking to avoid arrest is an
exigent circumstance justifying the nonconsensual entry into the offender's residence. See Curry v. State, 831 S.W.2d
485, 488 (Tex. App.--Houston [14th Dist.] 1992, pet. ref'd) (citing United States v. Santana, 427 U.S. 38 (1976)).
Here, Alvarez's behavior in attempting to flee Officer Funk forced Officer Funk to use force to prevent Alvarez from
fleeing and avoiding investigation.