Opinion issued March 27, 2008









 





In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00867-CR






TERRANCE JONES, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 209th District Court

Harris County, Texas

Trial Court Cause No. 1007797






MEMORANDUM OPINION


 A jury found appellant, Terrance Jones, guilty of felony murder (1) and assessed
punishment at confinement for 50 years. In two points of error, appellant argues that
(1) the evidence was legally and factually insufficient to prove that he voluntarily
participated in the offense and (2) the trial court erred in overruling his motion to
suppress the evidence obtained as a result of an unlawful warrantless arrest and a
written statement obtained by an involuntary waiver of rights.

 We affirm.

Background

 In the early morning hours of November 18, 2004, appellant and three other
men broke into the home of the complainant, Eric Arline, armed with shotguns and
handguns, and, in the process of committing a robbery, shot and killed the
complainant. The complainant was at home with Kynishia Arline, his wife, Canterra
Lewis, his cousin, Kenneth Williams, a friend who was spending the night on the
complainant's couch, and Kynishia's four-year-old daughter. Appellant and his
conspirators, Ronald Revis, Joseph Hope, and Paul Simpson, made a plan to rob the
complainant after receiving information that he had $30,000 in cash and two
kilograms of cocaine in his home. Appellant and his co-conspirators drove to the
complainant's home, forced their way into the trailer, and demanded the drugs and
money. When they were unable to locate the drugs and money, one of the
conspirators shot and killed the complainant. They stole one of the complainant's
vehicles and a cellular phone, and they took $400 in cash from Williams.

 After police arrived on the scene, they broadcast information concerning the
robbery and shooting and the stolen car. Deputy J. Talbert, a patrol officer with the
Harris County Precinct Three Constable's Office, spotted the vehicle, matched the
description and license plate to the broadcast information, and followed the vehicle
to an apartment complex. Deputy Talbert noticed that the driver was wearing socks
over his hands, and he knew that the suspects from the robbery were reported as
armed and dangerous. When Deputy Talbert drew his weapon, the driver and
appellant attempted to flee. Deputy Talbert apprehended appellant, promptly arrested
him, and then delivered him into the custody of the Harris County Sheriff's
Department. Appellant told the officers that the driver, who had gotten away, was
Ronald Revis and led them to Revis's home. Revis voluntarily agreed to accompany
the officers.

 In a written statement, appellant admitted his own participation in the robbery. 
Detective R. Coleman took his statement, typing it as appellant recounted his version
of the events. Detective Coleman testified at a suppression hearing that he informed
appellant of his legal rights, and appellant initialed each warning and the written
waiver of those rights that was printed at the top of his statement. Detective Coleman
also had appellant re-read the entire statement to ensure its accuracy and initial each
paragraph of the statement. Detective Coleman testified that appellant appeared to
understand the warnings he was given, that he was "cooperative and coherent," and
that he did not appear to be intoxicated. Detective S. Wichkoski, who witnessed the
statement, also testified that appellant seemed normal and calm, and did not appear
to be intoxicated or under the influence of any drugs.

 Appellant also testified at the suppression hearing. He claimed that he had
taken Xanax and marijuana before the robbery and that, at the time he gave his
statement to Detective Coleman, he was intoxicated and did not understand what he
was doing. The trial court overruled appellant's motion to suppress the statement.

 At trial, Detective W. Valerio testified that he spent several hours with
appellant on the morning of the incident, from around 5:00 a.m until 9:40 a.m., and
then several more hours later in the morning. Detective Valerio testified that
appellant was composed, calm, and helpful and did not show any signs of
intoxication, such as slurred speech or confusion and disorientation. Detectives
Coleman and Wichkoski testified again that appellant was cooperative and did not
appear to be intoxicated when he gave his statement around 11:30 that morning.

 During trial, appellant objected to the admission of evidence obtained as a
result of the search of the stolen vehicle after he was arrested. In making his
objection, he referred again to the outstanding portion of his motion to suppress,
which asked the trial court to suppress any evidence obtained as a result of
appellant's allegedly unlawful warrantless arrest. Deputy Talbert testified to the
events surrounding appellant's arrest, and the trial court overruled appellant's motion
to suppress on this issue as well.

 The trial court issued findings of fact and conclusions of law regarding
appellant's motion to suppress. The trial court found that appellant was lawfully
detained by police for suspicion of murder, and he was lawfully arrested for evading
police. The trial court found that appellant voluntarily agreed to give a statement to
Detective Coleman; that before appellant gave his statement, Detective Coleman
provided the warnings set out in article 38.22, section 2, of the Texas Code of
Criminal Procedure and Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966);
and that appellant told Detective Coleman that he understood each of those warnings. 
The trial court further found that, in providing his written statement, appellant
knowingly, intelligently, and voluntarily waived his article 38.22 rights and that
appellant was lucid and capable of understanding the warnings given to him and the
nature of his statements, despite his claim that he had trouble understanding his rights
due to the ingestion of Xanax ten hours earlier. The trial court also found that all of
the officers who testified during the hearing on appellant's motion to suppress the
written statement were credible witnesses, but appellant was not a credible witness.

 The State called the complainant's family and friends, who were present when
the incident occurred, to testify at trial. The State also called conspirator Joseph Hope
to testify. Hope testified that the four conspirators met at least three different times
during the day to plan the robbery. They got weapons and directions to the
complainant's house, decided they would all wear black in an effort to conceal their
identities, and formulated their plan. Appellant was to hold the screen door open,
Hope would shoot the lock, and Revis would enter the residence first. Hope testified
that the conspirators agreed that they did not want to hurt anyone and that he did not
think there would be any women or children present. Hope also testified that the
conspirators discussed the possibility that the complainant would be armed or that he
might resist and they were prepared to shoot if necessary. Hope testified that he knew
there was a risk that someone would get shot.

 Hope testified that appellant was taking Xanax and marijuana throughout the
day; however, Hope also testified that he was not with appellant all day and was not
sure exactly when appellant had last taken drugs. Hope did testify that appellant was
very intoxicated.

 Hope recounted the events of the robbery, testifying that appellant held the
screen door open, Hope shot the lock, and all four men entered the trailer. When the
complainant did not respond to the conspirators' demands for the drugs and money,
Revis started shooting the complainant. Hope was surprised by the shooting and did
not think it helped the robbery. He stated that the shooting was only "messing
everything up." Hope testified that he had not known Revis as long as he had known
the other conspirators and did not know how violent he could be.

 The State also presented forensic evidence showing that appellant had
gunpowder residue on his hands, and that his DNA matched that found on the grip
of one of the handguns recovered by police when they arrested appellant. The
defense did not present any evidence or testimony.

 The trial court instructed the jury on capital murder, felony murder, and
aggravated robbery. The trial court instructed the jury that it could find appellant
guilty as a primary actor, as a party to the crimes, or as a conspirator. The jury found
appellant guilty of felony murder.

Voluntary Participation in the Offense

 In his first point of error, appellant argues that the evidence is legally and
factually insufficient to prove that he voluntarily participated in the offense. 
Appellant relies on the testimony of accomplice Joseph Hope and on the evidence that
appellant was too intoxicated to form the requisite intent to commit the offense. 
Appellant argues that the evidence shows a lack of his involvement in the
commission of the crime, that the murder was not committed in furtherance of the
robbery, that the murder was not anticipated by appellant, and that the murder itself
was actually committed by another conspirator.

Legal and Factual Sufficiency Standard of Review

 When an appellant challenges both the legal and factual sufficiency of the
evidence, we must first determine whether the evidence was legally sufficient to
support the verdict. Harmond v. State, 960 S.W.2d 404, 406 (Tex. App.--Houston
[1st Dist.] 1998, no pet.). We review the legal sufficiency of the evidence by viewing
the evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 
Although our analysis considers all the evidence presented at trial, we may not
re-weigh the evidence and substitute our judgment for that of the fact finder. Id.

 We conduct a two-pronged factual sufficiency analysis. First, we must ask
whether the evidence introduced to support the verdict, although legally sufficient,
is so weak that the jury's verdict seems clearly wrong and manifestly unjust. Watson
v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (quoting Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). Second, we must ask whether the
conflicting evidence shows the jury's verdict to be against the great weight and
preponderance of the evidence. Id. at 415. We view all of the evidence in a neutral
light. Id. at 414. 

Guilt as a Conspirator

 A person commits felony murder if, in the course of and in furtherance of the
commission or attempted commission of a felony, he commits or attempts to commit
an act clearly dangerous to human life that causes the death of an individual. Tex.
Pen. Code Ann. § 19.02(b)(3) (Vernon 2003). Here, appellant was charged with
committing felony murder in the course of committing robbery. A person commits
the felony offense of robbery if, in the course of committing theft and with intent to
obtain or maintain control of the property of another, he intentionally, knowingly, or
recklessly causes bodily injury to another, or he intentionally or knowingly threatens
or places another in fear of imminent bodily injury or death. Id. § 29.02 (Vernon
2003).

 The trial court authorized the jury to find appellant guilty of felony murder if
it found that he intentionally or knowingly committed the act that led to the
complainant's death; or that he was criminally responsible for the conduct of Revis,
Hope, or Simpson as a party; or that he was guilty as a conspirator. An appellate
court reviewing the sufficiency of the evidence when the trial court has authorized the
jury to convict on more than one theory will uphold a guilty verdict if the evidence
suffices on any single theory. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App.
1999).

 We begin our analysis of appellant's claims by examining his guilt as a
conspirator under Texas Penal Code section 7.02(b). If, in the attempt to carry out
a conspiracy to commit one felony, another felony is committed by one of the
conspirators, all conspirators are guilty of the felony actually committed, although
having no intent to commit it, if the offense was committed in furtherance of the
unlawful purpose and was one that should have been anticipated as a result of the
carrying out of the conspiracy. Tex. Pen. Code Ann. § 7.02(b) (Vernon 2003).


 Legal Sufficiency

 For the verdict to be legally sufficient, the State had to prove that in the attempt
to carry out the robbery, one of the conspirators also committed an act clearly
dangerous to human life that caused the death of the complainant. The act must have
been committed in furtherance of the robbery, and it must be an act that should have
been anticipated as a result of carrying out the robbery. See id. §§ 7.02(b),
19.02(b)(3).

 The jury heard evidence that appellant was a participant in the conspiracy to
commit the robbery. Hope testified that the conspirators, including appellant, met
several times during the day to plan the robbery and that they acted according to a
plan. Hope testified that, although the group did not plan to kill the complainant, they
were prepared to shoot the complainant if necessary and they knew there was a risk
that someone could get shot. During the robbery itself, all four conspirators,
including appellant, broke into the complainant's home. They all wore black and had
predetermined tasks. Appellant held the door while another conspirator shot the lock
and forced the door open. One of them then demanded that they be given money and
drugs. In his own written statement, appellant indicated that he willingly participated
in the robbery and was motivated by the money he hoped the robbery would produce. 
Furthermore, the witnesses who were present during the incident testified that
appellant was armed with a firearm during the robbery and shooting. 

 The evidence also showed that when the complainant did not comply with the
conspirators' demands, Revis fired his weapon at the complainant multiple times. 
After the shooting, the conspirators completed the robbery by demanding the keys to
the complainant's car and taking the complainant's cell phone and $400 in cash from
Williams. Appellant was later apprehended while riding in the vehicle that was stolen
from the complainant in the robbery. 

 This evidence supports the conclusion that the murder of the complainant was
committed in furtherance of the robbery. Furthermore, Hope's testimony that the
conspirators anticipated that the complainant might resist and that the conspirators
were prepared to shoot if necessary supports the conclusion that the shooting was
anticipated. Viewing all of this evidence in the light most favorable to the verdict,
we conclude that the jury could have found the essential elements of the crime beyond
a reasonable doubt. See Tex. Pen. Code Ann. § 7.02(b); King, 29 S.W.3d at 562; see
also Love v. State, 199 S.W.3d 447, 452-54 (Tex. App.--Houston [1st Dist.] 2006,
pet. ref'd) (holding evidence was sufficient to show murder was committed in attempt
to carry out robbery and should have been anticipated by appellant when appellant
helped plan robbery and knew that firearms would be used).

 Factual Sufficiency

 Appellant argues that the jury could not have found that he was able to form
the intent to commit the offense "due in part to his level of intoxication." However,
voluntary intoxication is not a defense to the commission of a crime. Tex. Pen. Code
Ann. § 8.04(a) (Vernon 2003); Taylor v. State, 885 S.W.2d 154, 155-56 (Tex. Crim.
App. 1994) (construing section 8.04 in the context of murder).

 Appellant also argues that the killing was not committed in the furtherance of
any unlawful purpose, because it was actually detrimental to the conspirator's intent
to rob the complainant, and that the killing was not anticipated by appellant. Again,
appellant relies on Hope's testimony that he and appellant were not aware of how
violent Revis could be and that they were surprised by the shooting. However, Hope
also testified that, while the men agreed that they did not want to hurt anybody, they
were prepared to shoot if the complainant resisted. The testimony of every witness
indicated that appellant held a loaded handgun during the robbery, and forensic
evidence showed appellant had gun powder residue on his hands. As discussed
above, the State presented evidence that the complainant was shot in the course of
appellant's and his co-conspirators' carrying out a conspiracy to commit robbery, that
the shooting was in furtherance of the robbery, and that it was anticipated by the
conspirators. See Tex. Pen. Code Ann. § 7.02(b); Love, 199 S.W.3d at 452-54. The
evidence presented by the State is not so weak that the jury's verdict seems manifestly
wrong and unjust, and appellant's contradictory evidence does not show the jury's
verdict to be against the great weight and preponderance of the evidence. See
Watson, 204 S.W.3d at 414-15.

 We overrule appellant's first point of error.

Motion to Suppress

 In his second point of error, appellant argues that the trial court erred in
overruling his motion to suppress the evidence gained as a result of appellant's
warrantless arrest and appellant's written statement. Specifically, appellant claims
that officers illegally arrested and detained him and that appellant was too intoxicated
when he gave his statement to knowingly waive his legal rights and make a statement.

Standard of Review

 The trial court is the sole trier of fact at a suppression hearing and thus
evaluates witnesses' testimony and credibility. Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005). The denial of a motion to suppress is reviewed for abuse of
discretion, and we give great deference to the trial court's determination of historical
facts while reviewing de novo the trial court's application of the law. Balentine v.
State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). We look at the "totality of the
circumstances" in determining whether probable cause existed. Torres, 182 S.W.3d
at 902.

 A peace officer may arrest an individual without a warrant only if probable
cause exists with respect to the individual in question and the arrest falls within one
of the exceptions set out in the Texas Code of Criminal Procedure articles
14.01-14.04. Id. at 901. Article 14.03(a)(1) states, "Any peace officer may arrest,
without a warrant, persons found in suspicious places and under circumstances which
reasonably show that such persons have been guilty of some felony." Tex. Code
Crim. Proc. Ann. art. 14.03(a)(1) (Vernon Supp. 2007).

Probable Cause

 Here, Deputy Talbert observed appellant riding in a vehicle that was reported
stolen in conjunction with an armed robbery and shooting. When Deputy Talbert
approached the stolen vehicle, he observed that the driver had socks covering his
hands. As Deputy Talbert exited his vehicle and approached the suspects, the driver
and appellant both attempted to flee. The totality of the circumstances indicate that
Deputy Talbert had probable cause to detain appellant. See Torres, 182 S.W.3d at
902; see also Delk v. State, 855 S.W.2d 700, 711-12 (Tex. Crim. App. 1993) (holding
that officers had probable cause to arrest driver of car listed as stolen when suspect
was unable to provide proof of ownership); Covarrubia v. State, 902 S.W.2d 549, 554
(Tex. App.--Houston [1st Dist.] 1995, pet. ref'd) (holding that officers who were
lawfully attempting to detain individual for purpose of investigating possible criminal
activity had probable cause to arrest suspect for intentionally fleeing from officer). 
The record supports the finding by the trial court that the arrest and subsequent search
were lawful. See Torres, 182 S.W.3d at 902. The trial court did not abuse its
discretion when it overruled appellant's motion to suppress. See id.; Balentine, 71
S.W.3d at 768.

Waiver of Rights

 Appellant also claims that, as a result of his alleged intoxication, he was
incapable of knowingly and voluntarily waiving his right to remain silent. 
Intoxication, while relevant, does not render a confession involuntary per se. Jones
v. State, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996). Instead, the question becomes
whether a defendant's intoxication rendered him incapable of making an independent,
informed decision to confess. Id. Appellant's evidence regarding his intoxication
consists of his own testimony during the suppression hearing that he was too
intoxicated to understand what he was doing when he made his statement. On appeal,
appellant also points to Hope's testimony describing appellant's consumption of
marijuana and xanax pills. However, Detectives Coleman and Wichkoski both
testified that appellant did not appear to them to be intoxicated. As the sole trier of
fact, the trial court could have disregarded appellant's testimony that he was too
intoxicated to voluntarily waive his rights as not credible. See Torres, 182 S.W.3d
at 902. The record supports the findings by the trial court that appellant was lucid
and capable of understanding the warnings given to him and the nature of his
statements and that he voluntarily waived his right to remain silent. See Torres, 182
S.W.3d at 902. The trial court did not abuse its discretion in overruling appellant's
motion to suppress his statement. See Balentine, 71 S.W.3d at 768; Jones, 944
S.W.2d at 651.

 We overrule appellant's second point of error.

Conclusion

 We affirm the judgment of the trial court.





 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).
1. See Tex. Pen. Code Ann. § 19.02(b)(3) (Vernon 2003).