**Opinion issued July 2, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00859-CR

————————————

**RAY GENE ARRINGTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the Criminal Court at Law No. 11**
**Harris County, Texas**
**Trial Court Case No. 2138927**

---

## O P I N I O N

Ray Gene Arrington appeals from the trial court's denial of his motion to suppress. We affirm.

## Background

A Harris County deputy sheriff responded to a 911 call about a possible drunk driver. She arrested Arrington without a warrant outside his home. Arrington was charged with driving while intoxicated (DWI). TEX. PENAL CODE § 49.04. He filed a motion to suppress the evidence, arguing that it was obtained from an illegal seizure. After a hearing, the trial court denied the motion and entered findings of fact and conclusions of law. Arrington pleaded guilty and was sentenced to the agreed punishment, one year in the Harris County jail. The court suspended his sentence and placed him on community supervision for eighteen months.

## Motion to Suppress

In his only issue, Arrington contends that the trial court erred by denying his motion to suppress because the deputy did not have probable cause or exigent circumstances for a warrantless arrest. Arrington argues that when the deputy approached him, he was standing behind a fence on his property, and therefore, he was within the curtilage of his home. The State responds that the deputy had probable cause to arrest Arrington for DWI and did not need a warrant because DWI is a breach of the peace and Arrington was in a suspicious place. Alternatively, the State argues that the deputy developed probable cause and exigent circumstances to arrest Arrington for evading arrest once he attempted to

flee from her order. We conclude that the trial court did not err by denying Arrington's motion to suppress.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, and we review the trial court's application of the law to the facts de novo. *Id.* We give deference to the trial court's factual determinations because the trial court is the sole trier of fact, and the sole judge of witness credibility and the weight to be given testimony. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Our deferential review also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review mixed questions of law and fact that do not turn on credibility and demeanor, as well as purely legal questions, de novo. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

When the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). If the trial court fails to make a particular finding, we imply a fact finding to support the trial court's ruling when the evidence supports the implied finding. *See*

*Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). We afford the prevailing party the "strongest legitimate view of the evidence" and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013) (quoting *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011)). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

**B.     Facts Adduced at Supression Hearing**

Two witnesses testified at the hearing on the motion to suppress: concerned citizen Brandon Conley and Deputy S. Latham of the Harris County Sheriff's Office.

Conley testified that at 2:00 a.m. on February 26, 2017, he called 911 after he saw a sports utility vehicle (SUV) drive by going extremely fast. At the time, Conley was driving out of his neighborhood. He followed the SUV for 12 or 13 miles as it swerved back and forth, including into oncoming traffic. He estimated that the SUV was driving faster than 100 miles per hour because Conley only allowed himself to drive up to that speed. During the drive, he stayed in constant contact with emergency dispatchers.

A deputy constable caught up to the two cars about a mile before the SUV turned into a residential driveway. Conley turned on his hazard lights and alerted

4

dispatch so that the deputy constable would drive around him. The deputy constable drove around Conley's car and was between him and the SUV. The deputy constable did not activate emergency lights. The trio of cars continued for a mile before the SUV pulled into the residential driveway. Conley stopped about two houses away. The deputy constable stopped next to Conley and spoke with him from the car. While they were talking, Deputy Latham arrived and parked in front of the house with her spotlight on. Conley testified that the deputy constable had been relaying information to Deputy Latham. Deputy Latham asked Conley if he ever lost sight of the SUV. Conley replied that he had not and pointed out the driver (Arrington) standing outside his vehicle.

While they were talking, Conley saw Arrington get out of the SUV, stumble to his gate, and attempt to unlock it. Conley testified that Arrington appeared intoxicated, could not hold his balance, struggled to walk, and dropped his keys at least three times while trying to unlock a gate in a small fence. The wrought iron fence and gate between a detached garage and the main house was about four feet tall. It did not obstruct Conley's view.

Deputy Latham testified that she has hundreds of hours of training in DWI investigations. She arrived at the scene around 2:00 a.m., after learning from dispatch that a concerned motorist was following a suspected drunk driver in an SUV. Using the license plate number provided by Conley, she looked up the

address registered to the car and drove to that nearby address. She figured that given the time of night, the driver was likely headed home. When she arrived on the block, she saw the deputy constable talking to Conley. Conley told her that he had followed the SUV, that it was in the driveway, and that he had seen the driver get out of the car and stumble.

Deputy Latham saw Arrington standing behind the iron fence. She approached Arrington and asked him if the car in the driveway belonged to him and if he had been driving it. Arrington responded that Deputy Latham did not see him driving, and he made it home. At that time, the gate was closed but unlocked. Deputy Latham asked Arrington to come out from behind the fence to talk to her. She saw several dogs behind the fence, and she did not want anything to happen to them. Arrington fumbled with a keyed padlock on the outside of the fence and locked it. Deputy Latham told Arrington several times to come outside of the fence. His balance was unsteady, and he was stumbling. She noticed his heavily slurred speech and the strong odor of alcohol as he stumbled past her. Arrington repeated that he lived in the home and that Deputy Latham did not see him driving. He moved toward the back door of the main house and stumbled. She called for backup, believing that he was trying to evade detention. She unholstered her taser and ordered him not to enter the house. He fumbled with the doorknob to the house

and opened it. When he opened the door, Deputy Latham tased him, jumped over the fence, and arrested him.

Conley also testified that when Deputy Latham talked to Arrington, Arrington was behind the gate. When Arrington turned to unlock his door and go inside, Deputy Latham used her Taser. Conley heard Deputy Latham screaming, as if desperate for help. He jumped the fence to assist her in arresting Arrington.

## C. Findings of Fact and Conclusions of Law

The trial court made extensive findings of fact and conclusions of law. The court found that both witnesses were credible. A concerned motorist noticed Arrington driving erratically and dangerously and was so alarmed that he followed Arrington for many miles after 2:00 a.m., passing through at least two counties and speaking continuously with several 911 centers. The motorist never lost sight of Arrington, and a deputy constable joined near the end of the pursuit.

The trial court noted that DWI is a breach of the peace, and once the motorist and the deputy constable saw Arrington stumble out of his car, both the motorist and the deputy constable had probable cause to arrest for DWI. The court found that Arrington had been operating a vehicle and was intoxicated by something.

By retreating behind the fence and locking it, Arrington demonstrated an intent to keep out the public and was standing within his curtilage. A second

deputy, Deputy Latham, arrived and was informed of all that had transpired. There was an immediate and continuous pursuit of Arrington. Deputy Latham was in a public place and approached Arrington, noting a strong odor of alcoholic beverage, slurred speech, staggering, and fumbling. Arrington admitted to Deputy Latham that he had been driving. Before Deputy Latham jumped over the fence, she had a reasonable suspicion to detain Arrington for DWI. She had developed the requisite facts while being in an area she was entitled to be in, and she ordered him to come out so she could perform a DWI investigation. Arrington refused and locked the gate. When he attempted to enter the house, Deputy Latham gave him a direct order not to do so. The trial court found that even though Arrington was standing in the curtilage of his home, the order was valid based on the reasonable suspicion of a DWI. Arrington violated the order, giving Deputy Latham probable cause to arrest him for evading detention. Under the circumstances, he could not avoid an arrest by fleeing into his house. Deputy Latham took Arrington to the station because he resisted, and if he had been compliant, she would have performed field sobriety testing at the scene.

## D. Applicable Law

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. CONST. Amend. IV; *Weide v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth

Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Id.*[*] The burden then shifts to the State to establish that the search or seizure was reasonable. *Id.*; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The State may satisfy this burden by showing that one of the statutory exceptions to the warrant requirement is met. *Torres*, 182 S.W.3d at 902.

Probable cause for a warrantless arrest requires that, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge or of which he has reasonably trustworthy information are sufficient to warrant a reasonable belief that the person arrested had committed or was committing an offense. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). A finding of probable cause necessitates more than bare suspicion but less than would justify a conviction. *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). The test for probable cause is an objective one; it is unrelated to the subjective belief of the arresting officer and it requires a consideration of the totality of the circumstances facing the officer. *Amador*, 275 S.W.3d at 878. If probable cause

---

[*] The parties do not dispute that law enforcement did not obtain a warrant to arrest Arrington.

9

exists, exigent circumstances may require immediate, warrantless entry to arrest a suspect. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).

**E.    Analysis**

Arrington contends that the totality of the circumstances do not show that Deputy Latham had probable cause or exigent circumstances to arrest him without a warrant. We disagree. Deputy Latham had probable cause based on the collective knowledge of Conley and the deputy constable, and Arrington could not avoid arrest by retreating within the curtilage of his home.

**1.    Probable Cause**

The trial court did not err by concluding that Deputy Latham had probable cause. Before Deputy Latham arrived, both Conley and the deputy constable had probable cause to arrest Arrington for DWI. *See* TEX. CODE CRIM. PROC. art. 14.01(a) (a peace officer or any other person may arrest an offender when the offense is committed in his presence or within his view, if the offense is a felony or against the public peace). Driving while intoxicated is a breach of the peace. *Miles v. State*, 241 S.W.3d 28, 42 (Tex. Crim. App. 2007); *Gallups v. State*, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004). Probable cause is subject to the collective knowledge doctrine. *See State v. Duran*, 396 S.W.3d 563, 569 n.12 (Tex. Crim. App. 2013) (explaining that under the collective knowledge doctrine, when several officers are cooperating, their cumulative information may be considered in

assessing reasonable suspicion or probable cause); *see also Derichsweiler v. State*, 348 S.W.3d 906, 914–15 (Tex. Crim. App. 2011) ("[T]he detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather 'the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists.'") (citations omitted); *Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982) (holding that the sum of information known to cooperating agencies or officers at the time of the arrest should be considered in determining probable cause).

The cumulative knowledge of the deputy constable, Conley, and Deputy Latham gave Deputy Latham probable cause to arrest Arrington. First, Conley observed Arrington driving erratically at a high rate of speed through multiple counties. He watched as Arrington drove on the wrong side of the road and as other cars swerved to avoid him. He relayed all information to dispatch, who informed the deputy constable. Next, the deputy constable and Conley followed Arrington for the last stretch of the drive. This ongoing, potentially lethal conduct gave either man probable cause to arrest Arrington without a warrant. *Miles*, 241 S.W.3d at 43–44.

When Deputy Latham arrived, she also had probable cause to arrest Arrington. *See Duran*, 396 S.W.3d at 569 n.12; *see also Derichsweiler*, 348

11

S.W.3d at 914–15. Deputy Latham was informed by dispatch of all that Conley relayed, and she confirmed it with additional facts. *See Amores v. State*, 816 S.W.2d 407, 416 (Tex. Crim. App. 1991) (stating a police broadcast or anonymous phone call alone cannot establish probable cause; there must be additional corroborative facts to give rise to probable cause). She used the license plate number Conley provided to ascertain Arrington's home address, where she located the SUV Conley described. Conley pointed out Arrington to Deputy Latham and mentioned he had not lost sight of Arrington. When she approached Arrington, Deputy Latham noticed that Arrington had slurred speech and was stumbling. She smelled alcohol on Arrington, and he admitted to Deputy Latham that he had been driving.

Arrington argues that a deputy must perform field sobriety tests to have probable cause, but probable cause is based on a totality of the facts and circumstances in each case. The absence of some facts may be considered in that determination, but only in the context of the totality of the facts available. *See Parker v. State*, 206 S.W.3d 593, 601 (Tex. Crim. App. 2006*); State v. Garrett*, 22 S.W.3d 650, 655 (Tex. App.—Austin 2000, no pet.). Here, the evidence viewed in the light most favorable to the trial court's ruling is sufficient to establish probable cause for a warrantless arrest for driving while intoxicated.

## 2. Exigent Circumstances and Curtilage

The trial court did not err by finding exigent circumstances for the warrantless arrest. Arrington argues that the seizure was illegal because he was standing in the curtilage of his home. A law enforcement officer may not enter a residence to make a warrantless arrest unless the resident consents to his entry or exigent circumstances require the officer making the arrest to enter the residence. TEX. CODE CRIM. PROC. art. 14.05. The curtilage of a person's home, which is the area immediately surrounding and associated with the home, is protected by the Fourth Amendment. *State v. Betts*, 397 S.W.3d 198, 207 (Tex. Crim. App. 2013) (curtilage is protected by the Fourth Amendment); *Gonzalez v. State*, 588 S.W.2d 355, 360 (Tex. Crim. App. 1979) (describing curtilage as the land immediately surrounding and associated with the house). Although Arrington was standing in the curtilage of his home when Deputy Latham approached him, he was not entitled to evade arrest by retreating to his home. The hot pursuit of an offender seeking to avoid arrest is an exigent circumstance justifying nonconsensual entry into the offender's residence. *See Curry v. State*, 831 S.W.2d 485, 488 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (quoting *United States v. Santana*, 427 U.S. 38, 96 (1976) (providing that a suspect may not "defeat an arrest which has been set in motion in a public place. . . by the expedient of escaping to a private place")).

When Conley and the deputy constable were following Arrington, they did not know where or when Arrington would stop so they could apprehend him. Arrington happened to drive all the way to his home. Even at that point, they could not be sure the danger to the public had ended because Arrington still had the keys to his car and could have returned to the road. *See Miles*, 241 S.W.3d at 41 (explaining that a citizen may make a warrantless arrest of a person who commits a misdemeanor in his presence or view if the evidence shows that the person's conduct poses a threat of continuing violence or harm to himself or the public); *Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005) ("Given appellant's nervous behavior and his admission that he had been involved in a crime, it was reasonable to believe that appellant would not remain at the residential treatment home if the officers left to obtain a warrant.")

Once Arrington ignored Deputy Latham's order to come outside the gate, his attempt to evade the lawful detention was an exigent circumstance justifying his arrest. *See Rue v. State*, 958 S.W.2d 915, 919 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (holding that officer who sought to lawfully detain appellant for questioning about possible criminal activity had probable cause to arrest without a warrant once appellant evaded the lawful detention); *see also Covarrubia v. State*, 902 S.W.2d 549, 554 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding that officers had probable cause to arrest appellant, who intentionally fled from

officers who were lawfully attempting to detain him to investigate possible criminal activity).

After giving due deference to the trial court's determination of the historical facts and reviewing de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor, we conclude that, given the totality of the circumstances, the State carried its burden to justify Arrington's warrantless arrest. Accordingly, the trial court did not abuse its discretion by denying Arrington's motion to suppress.

## Conclusion

We affirm the judgment of the trial court.

Peter Kelly
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

Publish. TEX. R. APP. P. 47.2(b).

15